ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
FEB 15 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| OAK ENVIRONMENTAL CONSULTANTS, INC., Plaintiff, | |
| v. | 06-113 C<br>Civil Action No. |
| THE UNITED STATES OF AMERICA, Defendant. | |

**COMPLAINT**

Plaintiff Oak Environmental Consultants, Inc., by the undersigned counsel, for its Complaint against the United States of America alleges as follows:

**PARTIES**

1. Plaintiff is a corporation duly organized pursuant to the laws of the State of New Jersey with a principal place of business located at Greentree Mews, 600 North Route 73, Suite 12, Marlton, NJ 08503.

2. Defendant is the United States of America, acting by and through the Naval Facilities Engineering Command.

**JURISDICTION**

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1491(a)(1) and the Contract Disputes Act of 1978, ("CDA"), 41 U.S.C. § 605(c)(5) because of the Contracting Officer's failure

to issue a timely decision in response to the Plaintiff's certified claim filed on August 26, 2005.

## STATEMENT OF FACTS

4. A construction contract, bearing Contract No. N62472-02-C-0095, for the "Anchorage Housing Repair Project at the Naval Station, Newport, RI," was awarded to the Plaintiff on September 30, 2002, in the amount of $2,453,163.00.

5. The original contract completion date for the project was one year after award, or September 30, 2003.

6. The Plaintiff furnished payment and performance bonds as required by the terms of the contract. The performance bond, amounting to $2,453,163, consumed a considerable portion of the Plaintiff's bonding capacity.

7. The contract required the contractor to provide all labor, supervision, tools, material, equipment, and transportation to perform necessary repairs of various kinds to government housing at the Naval Station, Newport, RI.

8. The Plaintiff depends upon its ability to successfully complete its projects within the allowable contract time so that its bonding obligation will be released by the government and it will be free to seek other contracts.

9. After completing approximately fifty percent of the contract work, the Plaintiff was notified in writing, on May 2, 2003, that its right to continue performance of the contract was

suspended effective immediately through May 1, 2004 pursuant to FAR 52.242-14, Suspension of Work (APR 1984).

10. In addition to directing the Plaintiff to stop all work and mitigate its costs, the suspension of work notice also requested a proposal "for the deletion of all work under this contract."

11. The suspension of work notice, while purportedly intended to provide for a definite period of suspension was, in reality, a cleverly designed subterfuge intended to circumvent case precedent and to deny the Plaintiff fair and equitable compensation for costs incurred.

12. The purportedly definite suspension of work was actually indefinite because the Defendant was hoping that the pending privatization of base housing that led to the suspension of work would ultimately be overturned and that the Defendant could then, at some point within the next year, authorize and direct the Plaintiff to resume work.

13. By specifying that the suspension of work would last until May 1, 2004, the Defendant effectively prevented the Plaintiff from seeking other work because the Defendant continued to enforce and retain the Plaintiff's full obligation under its performance bond.

14. The issuance of a suspension of work order for the sole purpose of enabling the government to keep its options open for one year in the event that hoped-for policy changes might occur

does not amount to a definite suspension of work sufficient to deny the Plaintiff its extended home office overhead costs.

15. On December 12, 2003, almost five and one half months before the scheduled expiration of the "definite" suspension of work on May 1, 2004, the Defendant issued Modification P00003 terminating the contract for convenience.

16. Even after the December 12, 2003, issuance of the termination for convenience, the Defendant wrongfully refused to release the Plaintiff's bonding obligation and continued to treat the terminated contract as an open, or suspended, contract under which further contractor performance could be directed.

17. In fact, following the issuance of the termination for convenience, the Defendant required the Plaintiff to perform additional work on the project and paid the Plaintiff approximately $43,000 for work that was completed in February, 2004.

18. It was not until May 17, 2004, that the Defendant finally released the Plaintiff's bonding obligation.

19. The termination for convenience that was issued on December 12, 2003 was, in fact, a subterfuge in that the Plaintiff's performance bond was not released, the Plaintiff was required to continue performance of the contract, and the Defendant continued to treat the contract as one that was indefinitely suspended, not terminated.

20. The Defendant effectively, and unlawfully, treated the Plaintiff's contract as both terminated for convenience and suspended at the same time thereby seeking to deny the Plaintiff an equitable adjustment for its continuing overhead costs while retaining the right to direct the Plaintiff to resume performance at any time.

21. The Plaintiff was subsequently compensated for the direct costs related to the termination for convenience, but it was denied any compensation for the home office overhead costs it incurred while the Defendant continued to hold its bond after May 2, 2003 and until May 17, 2004.

22. The Plaintiff filed a certified claim on August 26, 2005 in the amount of $344,395.92 and the Defendant failed to issue a Contracting Officer's Decision, and failed to notify the Plaintiff as to when a decision would be issued, within sixty days as required by the Contract Disputes act of 1978. This appeal, therefore, follows the "deemed denial" of the Plaintiff's certified claim.

**FIRST CAUSE OF ACTION - EQUITABLE ADJUSTMENT**

23. The allegations contained in Paragraphs 1 through 22 are incorporated herein by reference.

24. Defendant's failure to compensate the Plaintiff for the extended overhead costs it incurred while its contract was indefinitely suspended, and while its bond was wrongfully held

even after the contract was terminated for convenience, entitles the Plaintiff to an equitable adjustment in the contract price.

25. The Defendant failed to equitably adjust Plaintiff's Contract as required by the Changes clause, the Termination for Convenience clause, and the Suspension of Work clause of the contract. As a direct result of the Defendant's failure, Plaintiff has incurred damages in the amount of $344,395.92, plus interest, attorneys' fees, and any other costs allowable by law.

**SECOND CAUSE OF ACTION - BREACH OF CONTRACT**

26. The allegations contained in Paragraphs 1 through 25 are incorporated herein by reference.

27. The Defendant breached the contract by issuing what was purported to be a "definite" suspension of work when there was no basis to anticipate that work would resume after the suspension.

28. The Defendant breached the contract by failing to release the Plaintiff's bond even after the contract was terminated for convenience, and by requiring the Plaintiff to continue the performance of work after the contract was terminated for convenience.

29. The Defendant effectively continued the suspension of work for an indefinite period following the purported termination for convenience that was not concluded until the bond was released on May 17, 2004.

30. By its actions and inactions, Defendant breached its express and implied contractual obligations to Plaintiff.

31. As a direct result of the breach of contract, Plaintiff has incurred damages in the amount of $344,395.92, plus interest, attorneys' fees, and any other costs allowable by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against the Defendant in the amount of $344,395.92, plus applicable interest, costs and attorneys' fees allowed by law, and for such other relief the Court deems appropriate.

Respectfully submitted,

Dated: 2-14-06

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Fort Washington, PA 19034
Tel: 215-542-2777
Fax: 215-542-2779
email: mhp@phslegal.com

Attorneys for
Oak Environmental Consultants, Inc.

Of Counsel:

Joseph A. Hackenbracht, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Fort Washington, PA 19034
Tel: 215-542-2777
Fax: 215-542-2779
email: jah@phslegal.com