IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OAK ENVIRONMENTAL CONSULTANTS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-113C (Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**Joint Stipulations of Fact**

1. Contract No. N62472-02-C-0095, for the "Anchorage Housing Repair Project at the Naval Station, Newport, RI," was awarded to Oak Environmental Consultants, Inc. ("OAK") on September 30, 2002, in the amount of $2,453,163. A1.

2. The contract was awarded by the Naval Facilities Engineering Command in Lester, Pennsylvania. A1.

3. The original contract completion date for the project was one year after award, or September, 30 2003. A1.

4. The contract was for the purpose of providing labor, supervision, tools, material, equipment, and transportation to perform necessary replacements and repairs of various types to the Anchorage Housing Units at the Naval Station, Newport, Rhode Island. A1.

5. Contract modifications P00001-P00004 were issued between January 29, 2003 and December 12, 2003. A23-38.

6. OAK furnished payment and performance bonds as required by the terms of the contract. A39-48.

7. The contract incorporated the Notice of Bonding Requirements clause, FAR 5252.228-9305 (Dec 2000). This clause, which is set forth in its entirety in the contract, states in pertinent part as follows:

> Within 15 days after receipt of award, the bidder/offeror to whom the award is made shall furnish the following bond(s) each with satisfactory security;
>
> A Performance Bond (Standard Form 25). The performance bond shall be in a penal sum equal to 100% of the contract price.
>
> A Payment Bond (Standard Form 25A). The payment bond shall be in a penal sum equal to 100% of the contract price.

A18-19.

8. The performance bond, Form 25, states in pertinent part as follows:

> CONDITIONS:
>
> The principal has entered into the contract identified above.
>
> THEREFORE
>
> The above obligation is void if the Principal –
>
> (a) (1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original

> term of the contract and any extensions thereof that are granted by the Government…, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made.

A42

9. The contract incorporated by reference the Suspension of Work clause. A10. This clause, FAR 52.242-14, states in pertinent part as follows:

> SUSPENSION OF WORK (APR 1984)
>
> The Contracting Officer may order the Contractor, in writing, to suspend, delay, or interrupt all or any part of the work of this contract for the period of time that the Contracting Officer determines appropriate for the convenience of the Government.
>
> If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly.

A49-50.

10. On May 2, 2003, the Resident Officer in Charge of Construction in Newport, Rhode Island, who is the contracting officer overseeing the Newport, Rhode Island field office, sent a letter to OAK, suspending performance of the contract. The letter states, in pertinent part, as follows:

> Your performance of the subject contract is hereby suspended pursuant to contract clause FAR 52.242-14, Suspension of Work (APR 1984) effective immediately through May 01, 2004.
>
> You are to stop all on-site work except that which is necessary to correct all safety deficiencies; prevent damage to existing government property, and secure existing housing units and project materials. . . .
>
> In addition, please provide a proposal for the deletion of all the remaining work under this contract to this office.

A51.

11. The Navy took this action due to a pending privatization of the base housing at Newport, Rhode Island, which the Navy anticipated would involve demolishing the existing housing and building new housing, thus ending the need for repairs to the existing housing. A52.

12. In a memorandum dated May 27, 2003, the Commander, Navy Region Northeast, directed the Commanding Officer, Engineering Field Activity Northeast, which was in charge of the Anchorage Housing contract, to close out the contract for the existing Anchorage Housing and confirmed that pending privatization had eliminated the need for the existing housing, and the existing housing was to be demolished. A52.

13. The Navy followed its initial request to OAK for a close-out proposal by letter on July 7, 2003, requesting that OAK provide a close-out proposal by July 11, 2003. See A53.

14. On 10 July 2003, OAK responded to the July 7, 2003 request for a close out proposal, stating that OAK was still in the process of completing the proposal, but would be happy to meet with the Navy to discuss the proposal the following week. A53.

15. On August 13, 2003, OAK submitted its proposal to close out the contract to the Navy. A54-57.

16. OAK's close out proposal included both costs which have been resolved by the parties and a request by OAK for Eichleay damages. A54-57.

17. The issue of alleged Eichleay damages has not been resolved.

18. On September 30, 2003, OAK wrote to the contracting officer in Newport requesting "release" of its performance bond under the contract in order to pursue other work. A58.

19. In a letter dated October 22, 2003, the contracting officer notified OAK that, pursuant to the suspension of work order dated May 2, 2003, Oak had been directed "to stop all on-site work except that which is necessary to correct all safety deficiencies, prevent damage to existing government property, and secure existing housing units and project materials." A59.

20. When boilers were installed in the units the previous winter, weather did not permit roof work and repair of penetrations, so the six-inch exhaust stack was temporarily connected to two existing four-inch exhaust stacks. A59.

21. In a letter dated October 22, 2003, the Contracting Officer stated that the temporary connection of the six-inch exhaust stack to two existing four inch stacks was "considered a safety deficiency by the Naval Station boiler inspector that had to be corrected immediately." A59.

22. OAK was directed to complete this scope of work for all installed boilers as identified in the contract documents by November 28, 2003. A59.

23. On October 24, 2003, OAK wrote to the contracting officer stating that the "administration" involved in closing out the project and "attempting meaningful negotiations" had gone beyond the July 31, 2003 original contract completion date, and that "onsite and home office administrative expenses [were continuing] as of this date; ever increasing the equitable indebtedness to OAK." A60-62.

24. The original contract completion date actually was September 30, 2003, one year after award of the contract.

25. OAK stated that, "[a]s a percentage of Oak's revenue base, the remaining performance balance and its eventual suspension has had a critical/drastic impact on our corporation's ability to forward work or increase bonded work" and that it was a "resolution of this bonded obligation that is a priority to OAK." A60-61.

26. OAK stated that it had learned recently that the Navy might not terminate the contract. A60-62.

27. On November 5, 2005, OAK emailed the contracting officer to follow up regarding the OAK close out proposal and restating its position that the Navy should "release" the bond. A63.

28. OAK stated in its email that it was being impacted because its bonding capacity was tied up by the Anchorage Housing contract. A63.

29. On December 2, 2003, the contracting officer sent OAK a second letter regarding the temporary connection of the boilers. A64.

30. The letter stated:

> Your performance of the subject contract was suspended pursuant to contract clause FAR 52.242-14, Suspension of Work (APR 1984) by enclosure 1 through May 01, 2004.
>
> You were directed to stop all on-site work except that which is necessary to correct all safety deficiencies, prevent damage to existing government property, and secure existing housing units and project materials.

> When the boilers were installed in the units last winter, weather did not permit roof work and repair of penetrations. The 6" exhaust stack was temporarily connected to two existing 4" exhaust stacks. This is considered a safety deficiency by the Naval Station boiler inspector and must be corrected immediately.
>
> [A] letter . . . dated 22 October 2003 was issued as direction to complete this scope of work for all installed boilers as identified in the contract documents by 28 November 2003. As of 2 December 2003, work has not begun and the cold weather is imminently upon us. Please provide the schedule you plan to follow to complete this work by 4 December 2003.

A64.

31. OAK performed requested work on the boiler connections from December 19 through December 23, 2003, and from February 9 through February13, 2004. A65-75.

32. On December 4, 2003, OAK submitted an invoice and invoice report and requested that the Navy pay OAK the corrected balance due. A76-86.

33. On December 8, 2003, OAK provided the Navy with additional information regarding costs. A87-112.

34. On February 9, 2004 and March 8, 2004, the Navy certified two additional invoices for payment after the suspension. A113-18.

35. Invoice 5, dated December 31, 2003, and certified for payment by the Navy on February 9, 2004, was paid in the amount of $24,407.21, which consisted of approximately $18,377 for partial completion of the boiler connection work, and approximately $6,030 for adjustments of 24 other items, based upon a re-review of percents complete. A113-15, 118.

36. Invoice 6, dated February 24, 2004, and certified for payment by the Navy on March 8, 2004, was paid in the amount of $19,193.41, which consisted entirely of the balance for the remainder of the boiler connection work. A116-17, 118.

37. The contract was terminated in whole for the Government's convenience under clause FAR 52.249-2, on December 12 2003. A31-36.

38. Also on December 12, 2003, the Engineering Field Activity Northeast, which oversees the Newport, Rhode Island office, sent a letter to OAK more fully describing what is involved in a termination for convenience and what steps should be taken by the contractor. A119-22.

39. The letter was executed by a contracting officer from the Engineering Field Activity, Northeast.

40. This letter included an acknowledgement form which was signed by OAK on March 11, 2004. A123-24.

41. Modification P00004 to the contract, with an effective date of August 3 2005, was a bilateral modification signed by both parties. A37-38.

42. In this modification the parties agreed to a settlement of Termination for Convenience costs in the amount of $326,659. A37-38.

43. The parties agreed in the modification that the contractor reserved its right to file a request for equitable adjustment, or a claim, for home office overhead pursuant to the Eichleay formula. A37-38.

44. On August 26, 2005 OAK filed a claim for $344,395.92 for Eichleay damages measured from May 2, 2003, through May 17, 2004. A127-29.

45. The Navy did not issue a final decision within 60 days of the time OAK filed its claim.

46. OAK filed a complaint upon the basis of a deemed denial on February 14, 2006.

Respectfully submitted,

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Fort Washington, PA 19034
Tel: 215-542-2777
Fax: 215-542-2779
email: mhp@phslegal.com

Attorney for Oak Environmental Consultants, Inc.

Dated: September 22, 2006

Peter D. Keisler
Assistant Attorney General

David M. Cohen
Director

***s/ Steven J. Gillingham***
STEVEN J. GILLINGHAM
Assistant Director

***s/Richard P. Schroeder***
RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: 202-35e-7961
Fax: 202-353-7988
email: richard.schroeder@usdoj.gov
Attorneys for Defendant

Dated: September 22, 2006