7300/30

## NAVAL FACILITIES ENGINEERING COMMAND

**1. CONTRACTOR'S INVOICE**

From: OAK ENVIRONMENTAL CONSULTANTS, INC.
600 N. ROUTE 73, SUITE 12, MARLTON, NJ 08060

Invoice Date: 24-Feb-04
Invoice Number: 6

POC/Telephone/email for this invoice: Bruce Newman/856-988-9553/bpn@oakgroup.net

To: Contract Specialist: KAREN SAMPSON

**Below is a Statement of Performance under Contract N62472-02-C-0095** **Task Order #** N/A
**for** ANCHORAGE HOUSING REPAIRS AT NAVAL STATION, NEWPORT, RI

The enclosure provides breakdown of this statement of performance.

| | | | |
|---|---|---|---|
| A. | Total value of contract/task order through change | | $ 2,453,163.00 |
| B. | Percentage of performance complete | 46.4034% | |
| C. | Value of completed performance | | $1,138,350.75 |
| D. | Less total of prior payments | | $1,119,851.21 |
| F. | Amount of this invoice | | $ 18,499.54 |

Signature and Title: [signature] Operations Director
Date: 2/24/2004 Signature of Authorized Representative

**2. FIRST ENDORSEMENT** **Receipt and Acceptance Certification**

From: ROICC, NAVFAC CONTRACTS, NEWPORT, RI
To: DFAS OAKLAND, CA

**1. Payment is recommended as follows:**

| | | | |
|---|---|---|---|
| A. | Amount of work completed to (date) | 2/24/04 | $ 1,139,044.62 |
| B. | Less: | | |
| | Retention | $ ⌀ | |
| | Other Deductions | $ ⌀ | $ ⌀ |
| C. | Subtotal | | $ 1,139,044.62 |
| D. | **Less previous payments** | | $ 1,119,851.21 |
| E. | **Certified amount for payment #** | #6 on TO # | $ 19,193.41 |
| F. | Elapsed contract time (if applicable) | | |
| G. | Responsible Certifying UIC | N62472 | |
| H. | Invoice Receipt Date | 2-26-04 | |
| I. | Material/Services Receipt Date | 2-24-04 | |
| J. | Material/Services Acceptance Date | 2-24-04 | |
| K. | Date forwarded to paying office | | |

L. I certify this amount is correct and payment is recommended.

Signature: [signature] Date: 3/3/04
Signature of Authorized Representative

Name and Title (typed): NOLAN REDDING AROICC
Phone and address: 401-841-1763 1 SIMONPIETRI DR. NEWPORT RI 02841

RECEIVED 2004 FEB 26 PM 1:23

**3. PROMPT PAYMENT CERTIFICATION**

**I certify that the accounting data provided is accurate, funds have been obligated in appropriate accounting system and changes have been applied to the appropriate accounting classification reference number (ACRN), available funds have been decremented for the amount approved for disbursement and will not be de-obligated and the above invoice is correct and proper for payment.**

Signature: [signature] Date: 3/8/04
Signature of Authorized Representative

Name and Title (typed):
Phone and address:

**Line(s) of accounting to be used for this invoice** (include appropriate Line Item # (CLIN, SLIN, or ACRN, etc)

AA = $ 19,193.41

Anchorage Housing Renovations N62472-02-C-0095

Work in place as of 2/24/04 for invoice #8

| Task Description | Earned Value Report | Certified % complete | Amount | Complete | Contract | % |
|---|---|---|---|---|---|---|
| Bond | $ 49,063.00 | 100% | $ 49,063.00 | 1 | 1 | 1.000 |
| Demo Bath | $ 54,165.60 | 45.8% | $ 24,825.90 | 110 | 240 | 0.458 |
| Demo Bath | $ 1,840.80 | 45.8% | $ 843.70 | 110 | 240 | 0.458 |
| Tub | $ 27,084.00 | 44.2% | $ 11,962.10 | 106 | 240 | 0.442 |
| Tub | $ 45,686.40 | 44.2% | $ 20,178.16 | 106 | 240 | 0.442 |
| Shower Wall | $ 36,112.80 | 44.2% | $ 15,949.82 | 106 | 240 | 0.442 |
| Shower Wall | $ 89,510.40 | 44.2% | $ 39,533.76 | 106 | 240 | 0.442 |
| Mixing Valves | $ 42,295.20 | 45.8% | $ 19,385.30 | 110 | 240 | 0.458 |
| Mixing Valves | $ 62,793.60 | 45.8% | $ 28,780.40 | 110 | 240 | 0.458 |
| Trip & Waste | $ 14,100.00 | 44.2% | $ 6,227.50 | 106 | 240 | 0.442 |
| Trip & Waste | $ 11,690.00 | 44.2% | $ 5,163.08 | 106 | 240 | 0.442 |
| Sheetrock | $ 27,084.00 | 45.4% | $ 12,300.66 | 109 | 240 | 0.454 |
| Sheetrock | $ 16,440.00 | 45.4% | $ 7,466.51 | 109 | 240 | 0.454 |
| Toilet | $ 28,197.60 | 44.2% | $ 12,453.94 | 106 | 240 | 0.442 |
| Toilet | $ 113,258.40 | 44.2% | $ 50,022.46 | 106 | 240 | 0.442 |
| Vanity | $ 28,908.00 | 44.2% | $ 12,767.70 | 106 | 240 | 0.442 |
| Vanity | $ 133,351.20 | 44.2% | $ 58,896.78 | 106 | 240 | 0.442 |
| Medicine Cabinet | $ 14,611.20 | 44.2% | $ 6,453.28 | 106 | 240 | 0.442 |
| Medicine Cabinet | $ 71,284.80 | 44.2% | $ 31,484.12 | 106 | 240 | 0.442 |
| Sub-floor demo | $ 9,028.80 | 45.8% | $ 4,138.20 | 110 | 240 | 0.458 |
| Sub-floor demo | $ 1,096.80 | 45.8% | $ 502.70 | 110 | 240 | 0.458 |
| Sub-floor install | $ 27,081.60 | 45.8% | $ 12,412.40 | 110 | 240 | 0.458 |
| Sub-floor install | $ 29,227.20 | 45.8% | $ 13,395.80 | 110 | 240 | 0.458 |
| Ceramic Floor | $ 72,213.60 | 45.0% | $ 32,496.12 | 108 | 240 | 0.450 |
| Ceramic Floor | $ 43,744.80 | 45.0% | $ 19,685.16 | 108 | 240 | 0.450 |
| Demo light/Smoke/CO | $ 17,414.40 | 44.2% | $ 7,691.36 | 106 | 240 | 0.442 |
| Demo light/Smoke/CO | $ - | 44.2% | $ - | 106 | 240 | 0.442 |
| Smoke/CO | $ 13,063.20 | 44.2% | $ 5,769.58 | 106 | 240 | 0.442 |
| Smoke/CO | $ 27,415.20 | 44.2% | $ 12,108.38 | 106 | 240 | 0.442 |
| Hall Light | $ 13,063.20 | 44.2% | $ 5,769.58 | 106 | 240 | 0.442 |
| Hall Light | $ 29,244.00 | 44.2% | $ 12,916.10 | 106 | 240 | 0.442 |
| Dining Light | $ 13,063.20 | 44.2% | $ 5,769.58 | 106 | 240 | 0.442 |
| Dining Light | $ 29,244.00 | 44.2% | $ 12,916.10 | 106 | 240 | 0.442 |
| Demo Patio Doors | $ 8,959.74 | 39.0% | $ 3,494.30 | 46 | 118 | 0.390 |
| Demo Patio Doors | $ 2,073.26 | 39.0% | $ 808.57 | 46 | 118 | 0.390 |
| Install Patio Doors | $ 16,024.40 | 39.0% | $ 6,249.52 | 46 | 118 | 0.390 |
| Install Patio Doors | $ 79,305.44 | 39.0% | $ 30,929.12 | 46 | 118 | 0.390 |
| Remove boiler | $ 25,847.64 | 87.04% | $ 22,497.01 | 47 | 54 | 0.870 |
| Remove boiler | $ - | 87.04% | $ - | 47 | 54 | 0.870 |
| Remove WH | $ 18,092.70 | 87.04% | $ 15,747.34 | 47 | 54 | 0.870 |
| Remove WH | $ - | 87.04% | $ - | 47 | 54 | 0.870 |
| Remove stacks | $ 15,518.52 | 86.5% | $ 13,423.52 | 45 | 52 | 0.865 |
| Remove stacks | $ - | 86.5% | $ - | 45 | 52 | 0.865 |
| Install boilers & controls | $ 47,042.10 | 87.04% | $ 40,944.03 | 47 | 54 | 0.870 |
| Install boilers & controls | $ 217,136.70 | 87.04% | $ 188,989.27 | 47 | 54 | 0.870 |
| Install WH | $ 31,017.06 | 87.04% | $ 26,996.32 | 47 | 54 | 0.870 |
| Install WH | $ 87,881.22 | 87.04% | $ 76,489.18 | 47 | 54 | 0.870 |
| Piping modifications | $ 93,050.64 | 87.04% | $ 80,988.49 | 47 | 54 | 0.870 |
| Piping modifications | $ 28,431.54 | 87.04% | $ 24,745.96 | 47 | 54 | 0.870 |
| Balance system | $ 7,753.32 | 87.04% | $ 6,748.26 | 47 | 54 | 0.870 |
| Balance system | $ - | 87.04% | $ - | 47 | 54 | 0.870 |
| Repair roof penetrations | $ 27,915.30 | 86.5% | $ 24,146.73 | 45 | 52 | 0.865 |
| Repair roof penetrations | $ - | 86.5% | $ - | 45 | 52 | 0.865 |
| Demo door/frame | $ 8,808.00 | 0% | $ - | 0 | 54 | 0.000 |
| Demo door/frame | $ 270.60 | 0% | $ - | 0 | 54 | 0.000 |
| Door w/window | $ 3,340.20 | 0% | $ - | 0 | 54 | 0.000 |
| Door w/window | $ 26,008.20 | 0% | $ - | 0 | 54 | 0.000 |
| Door Frame | $ 8,908.80 | 0% | $ - | 0 | 54 | 0.000 |
| Door Frame | $ 13,419.60 | 0% | $ - | 0 | 54 | 0.000 |
| Smoke/CO - entrance | $ 2,402.40 | 76.7% | $ 1,841.85 | 46 | 60 | 0.767 |
| Smoke/CO - entrance | $ 3,605.40 | 76.7% | $ 2,764.15 | 46 | 60 | 0.767 |
| Hall Light Sensor | $ 7,125.00 | 76.7% | $ 5,462.52 | 46 | 60 | 0.767 |
| Hall Light Sensor | $ 8,412.00 | 76.7% | $ 6,449.23 | 46 | 60 | 0.767 |
| Porch Column | $ 126,766.08 | 0% | $ - | 0 | 54 | 0.000 |
| Deck Stairs | $ 345,669.20 | 0% | $ - | 0 | 54 | 0.000 |
| **Total** | **$ 2,453,162.06** | | **$ 1,139,044.62** | | | |

Per your request, here is an explanation concerning invoice payments after suspension. To summarize, payments #4 and #5 (after suspension) consisted of approximately $37,571 for completion of the stack safety corrections (the work had not been previously completed, nor paid) and approximately $6,030 for minor adjustments from previous invoices for percents complete.

Below for reference is the Payment Log:
<< File: 020095 payment log.PDF >>

Work was suspended on 5/2/03.

Invoice #4 dated 4/30/03 was the last major payment for work prior to the suspension and included stored materials as well as work in place. Oak's invoice showed the value of completed work to be $1,159,310.48, while the Government's endorsement valued the amount of work complete to be $1,095,444. The difference of approximately $63,866 is documented in a ROICC prepared "Deductions from Oak Invoice #4 for Anchorage" worksheet. There were two categories of deductions: Items not completed (remove roof stacks and repair roof penetrations) and Stored Materials value adjustment. Below is a copy of the invoice and worksheet.
<< File: 020095 invoice 4.PDF >>

By letter of 10/22/03, ROICC advised that "When the boilers were installed in the units last winter, weather did not permit roof work and repairs of penetrations. The 6" exhaust stack was temporarily connected to two existing 4" exhaust stacks. This is considered a safety deficiency by the Naval Station boiler inspector and must be corrected immediately."
<< File: 020095 ROICC letter 10-22-03.PDF >>

By letter dated 12/4/03, Oak advised that they wanted to rectify discrepancies between their invoices and receivables from the Navy as stated in their email of August 20th. And that after their review ". . . that there were a number of omissions in the Earned Value Reports which had been previously forwarded to you. Enclosed please find our corrected Report for your review." Below is a copy of the letter.
<< File: 020095 oak letter 12-4-03.PDF >>

Invoice #5 dated 12/31/03 was paid in the amount of $24,407.21. It consisted of approximately $18,377 for partial completion of the stack safety correction and approximately $6,030 for small adjustments to 24 other items based on a re-review of actual percents complete. Below is a copy of the invoice.
<< File: 020095 invoice 5.PDF >>

Invoice #6 dated 2/24/04 was paid in the amount of $19,193.41. It consisted totally of the balance for the remainder of the stack safety correction. Below is a copy of the invoice.
<< File: 020095 invoice 6.PDF >>
Any further questions, please ask.
Carl

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY, NORTHEAST
NAVAL FACILITIES ENGINEERING COMMAND
10 INDUSTRIAL HIGHWAY
MAIL STOP, #82
LESTER, PA 19113-2090

IN REPLY REFER TO
4370
Code NE ACQ
December 12, 2003

VIA FEDERAL EXPRESS/FACSIMILE

Mr. Edward J. Eichen
OAK ENVIRONMENTAL CONSULTANTS, INC.
600 n. route 73
Marlton, NJ 08060

Dear Mr. Eichen:

SUBJECT: TERMINATION FOR CONVENIENCE #04-001T

Reference is made to contract N62472-02-C-0095, Anchorage Housing Project at Naval Station, Newport, RI. Enclosed please find Modification P00003 Terminating For Convenience of the Government the subject contract. You are hereby notified and directed as follows:

(a) ***Effective date of termination***. You are notified that all remaining work under Contract No. N62472-02-C-0095 (Herein referred to as ``the Contract'') is terminated in whole for the Government's convenience under the FAR Clause 52.249-2 Alternate I entitled Termination For Convenience of the Government, (Fixed Price), (Sep 1996). The termination is effective December 12, 2003.

(b) ***Cessation of work and notification to immediate subcontractors***. You shall take the following steps:

(1) Stop all work, make no further shipments, and place no further orders relating to the contract, except for-

(i) Work-in-process or other materials that you may wish to retain for your own account; or

(ii) Work-in-process that the Contracting Officer authorizes you to continue **(A)** for safety precautions, **(B)** to clear or avoid damage to equipment, **(C)** to avoid immediate complete spoilage of work-in-process having a definite commercial value (see paragraph (j) below), or **(D)** to prevent any other undue loss to the Government. (If you believe this authorization is necessary or advisable immediately notify the Contracting Officer by telephone or personal conference and obtain instructions).

(2) Keep adequate records of your compliance with subparagraph (1) above showing the-

(i) Date you received the Notice of Termination;
(ii) Effective date of termination; and
(iii) Extent of completion of performance on the effective date.

(3) Furnish Notice of Termination to each immediate subcontractor and supplier that will be affected by this termination. In the notice-
(i) Specify your government contract number;
(ii) State whether the contract has been terminated completely;
(iii) Provide instructions to stop all work, make no further shipments, place no further orders, and terminate all subcontracts under the contract, subject to the exceptions in subparagraph (1) above;
(iv) Provide instructions to submit any settlement proposal promptly; and
(v) Request that similar notices and instructions be given to its immediate subcontractors.

(4) Notify the Contracting Officer of all pending legal proceedings that are based on subcontracts or purchase orders under the contract, or in which a lien has been or may be placed against termination inventory to be reported to the Government. Also, promptly notify the Contracting Officer of any such proceedings that are filed after receipt of this Notice.

(5) Take any other action required by the Contracting Officer or under the Termination clause in the contract.

*(c) Termination inventory.*

(1) Use your best efforts to sell all termination inventory wherever located, at best price available, within thirty (30) days of date of this letter.

(2) To settle your proposal, it will be necessary to establish that all prime and subcontractor termination inventory has been properly accounted for. For detailed information, see Part 45 of the FAR.

(d) ***Settlements with subcontractors.***

You remain liable to your subcontractors and suppliers for proposals arising because of the termination of their subcontracts or orders. You are requested to settle these settlement proposals as promptly as possible. For purposes of reimbursement by the Government, settlements will be governed by

4370
Code NE ACQ
December 12, 2003

(h) ***Administrative***.

Termination Settlement Proposals are to be submitted within thirty (30) days from receipt of this letter to the Contracting Officer, Naval Station, Building 1, Simonpietri Drive, Newport, RI 02841-1711 who is the administration office named to process the Termination Settlement for this contract. Questions pertaining to the above may be directed to Denise Abraham at NAVFAC Contracts, Newport, RI. (401) 841-1191.

Sincerely

MARILYN D. COLOT
Contracting Officer
By direction of the
Commanding Officer

Copy to: Lincoln General Insurance Co.
ROICC Newport
SBA District Office

ACKNOWLEDGMENT OF NOTICE

The undersigned acknowledges receipt of a signed copy of this notice on ________________________, 2003. Two signed copies of this notice are returned to Naval Facilities Engineering Command, Engineering Field Activity, 10 Industrial Highway Mail Stop #82, Lester, PA. 19113-2090 ATTN: Code NE IPT/TW

________________________________________
(Name of Contractor)

By______________________________________
(Name)

________________________________________
(Title)

oak
environmental
consultants, inc.

March 11, 2004

Naval Facilities Engineering Command
EFA Northeast
10 Industrial Highway
Mail Stop, #82
Lester, PA 19113-2090
Att: Ms. Marilyn Colot

REF: Termination for Convenience #04-001T

Dear Ms. Colot,

Enclosed please find our acknowledgement to the above contract termination.

Please contact me if you require further information.

Sincerely,

Bruce Newman
Director of Operations

**ACKNOWLEDGMENT OF NOTICE**

The undersigned acknowledges receipt of a signed copy of this notice on 11 March, 2003. Two signed copies of this notice are returned to Naval Facilities Engineering Command, Engineering Field Activity, 10 Industrial Highway Mail Stop #82, Lester, PA. 19113-2090 ATTN: Code NE IPT/TW

OAK Environmental Consultants, Inc.
(Name of Contractor)

By Edward J. Eicher
(Name)

Pres.
(Title)

June 22, 2005

Jeff Longenecker, VP
Commerce Bond Services Group
200 Lancaster Ave.
Devon, PA 19333

RE: Anchorage Housing Renovations, Naval Station Newport, RI

Mr. Longenecker,

I was the Assistant Regional Officer in Charge of Construction (AROICC) for the above referenced project. I have since been honorably released from active military duty, and remained in contact with OAK Environmental. This project was suspended on May 2, 2003 while I was managing the project for the Navy. This was as the result of the Navy's plans to privatize the base housing at Newport and in no way reflects on OAK Environmental's performance; which was satisfactory in all regards.

Although the suspension letter states that the suspension was for a period of one year, OAK Environmental's bond was not released as it was thought that the privatization would not go through and the project could be restarted at anytime. OAK was asked to remain on standby and prepared to continue the work during this period in the event the project could be restarted. OAK and the ROICC office remained in regular contact during this time with regards to either restarting the work or releasing the bond. The bond was finally released on May 17, 2004 terminating the contract for convenience of the government.

If there are any further questions, I can be reached at 401-467-6300.

Sincerely,

Nolan Redding

October 18, 2005

Ed Eichen
Oak Environmental
600 North Route 73 – Suite 12
Marlton, NJ 08053

RE: Anchorage Housing Renovations, Naval Station Newport, RI

Mr. Eichen,

As you know, your firm contacted me in June 2005 seeking help regarding your stated difficulty in obtaining a bond due to issues related to the subject project. It was indicated to me that your new bonding company needed some general background information regarding the suspension and subsequent termination for convenience. The type of information the bonding company needed was provided and I was asked to send them a letter. It was never indicated or discussed that this letter would be sent to the government or used for any other audience than your bonding company.

It has come to my attention that the letter I provided to you dated June 22, 2005 has now been submitted to the government in support of an Eichelay claim for the subject project. I did not intend for this letter to be used for any such purpose other than to provide general information to your bonding company. This letter should not be used in any other context or for any other reason.

If there are any further questions, I can be reached at 401-467-6300.

Sincerely,

Nolan Redding

Copy to:
ROICC Newport
1 Simonpietri Drive
Newport, RI

SENT VIA: FAX
FIRST CLASS MAIL

oak
environmental
consultants, inc.

RECEIVED

2005 SEP -9 AM 10:53

OIC/ROICC NAVFAC
CONTRACTS
NEWPORT, RI

CQ
KS
PK

26 August, 2005

Mr. Andrew Sullivan
LCDR, CEC US Navy
Resident Officer in Charge of Construction
Naval Facilities Engineering Command
Naval Activates Narragansett Bay Area
One Simonpietri Drive
Newport, RI 02841-1712

Re: Your Letter of 24 August, 2005 4330 ROICC/L4116
Subject: Contract N62472-02-C-0095
Via: FedEx

Mr. Sullivan,

In reference to the above, please accept this letter as our Claim as directed by FAR 52.233.1 Disputes. Please note the certification statement below.

We are in accord with your contention that our Claim is governed by the Eichleay formula and further that the legal tests for use are that the contractor be held on standby and be unable to take on replacement work.

The facts however do not support your contention that we were not held on indefinite stand-by or that we were able to obtain replacement work. The facts clearly show that the Navy directed us to remain on standby and to remain ready to return to work immediately, which in fact the Navy ordered us to do. While your letter of 2 May 2003 suspended our work "effective immediately through 1 May 2004", the Navy did not release our bond until 17 May 2004, effectively preventing us from obtaining "replacement work". We had numerous conversations via telephone and email (examples attached) with then Contracting Officer Denise Abraham and then Asst. ROICC Lt. Nolan Redding attempting to obtain release of our bond so that we could pursue replacement work. We were told repeatedly that our bond would not be released because the ROICC hoped that the privatization of base housing would not go through and we would be called upon to resume work immediately. The ROICC did not want the project delayed by our having to re-obtain bonding. This not only tied up the lion's share of our bonding capacity, but also created a lack of confidence in our bonding firm which effectively precluded our ability to



greentree mews • 600 north route 73. suite 12 • marlton, nj 08053
(856) 988-9553 • (fax) (856) 797-9303 • web address
www.oakgroup.net

oak
environmental
consultants, inc.

extend our bonding line. They were concerned that at least some of the reason the project was suspended (and more importantly to them, the bond withheld) may have occurred as the result of some fault in our work.

Even after release of our bond, the Navy's over two year delay in dealing with the termination has continued to foster a lack of confidence by our bonding company, further exacerbating our ability to obtain the bonds necessary to continue our business. In order to mitigate the bonding firm's fears, we had to obtain a letter from the Navy (attached) which lists the reasons for the termination and the Navy's delay in closing out the matter. That letter (attached) written by former Lt. Nolan Redding of your ROICC office clearly states that we were held on indefinite standby, that we could be recalled at any time. As further evidence of the fact that were ordered to remain on standby and prepared to immediately resume work, we were ordered to resume on site work December of 2003 and continued working until February of 2004.

As is clearly evident our Claim meets with exactitude the two legal tests for use of the Eichleay formula as referenced in your letter:

1) Were ordered to be on standby and were in fact recalled to work post termination. The attached invoice for that work and Mr. Redding's letter clearly indicate this.

2) We were unable to obtain replacement work because we had to remain ready to immediately resume work and because our bond was not released. The effect on our firm's financial position is clearly evidenced by the DCAA audit(s).

We have provided ample proof herein to substantiate our Claim. In the absence of anything to the contrary we respectfully demand that you honor our Claim immediately.

Our claim is for $344,395.92. This is based on DCAA's finding of $394,883.94 as the fixed allowable overhead for the contract divided by the period of performance (438 days); yielding a daily O/H rate of $901.56. Multiplying the daily O/H rate ($901.56) by the number of suspension days (382), yields a total amount owed to us of $344,395.92.

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contact adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.



greentree mews • 600 north route 73. suite 12 • marlton, nj 08053
(856) 988-9553 • (fax) (856) 797-9303 • web address
www.oakgroup.net

oak environmental consultants, inc.

In light of our long term (10+ year) relationship, I sincerely hope we can come to a just and amicable resolution. Unfortunately in the event that we cannot reach a just and amicable resolution, the harm (as evidenced by DCAA audit) that this situation has caused the firm will force us to pursue legal recourse.

Sincerely,
OAK Environmental Consultants, Inc.
By:

Eduard J. Eichen, CIH
President

Encl.
cc: Michael Onufrak, Esq.



greentree mews • 600 north route 73. suite 12 • marlton, nj 08053
(856) 988-9553 • (fax) (856) 797-9303 • web address
www.oakgroup.net