**Rodgers, Vivian CIV NAVFACWASH**

**From:** Redding, Nolan LTJG (EFANE)
**Sent:** Wednesday, April 23, 2003 3:18 PM
**To:** Sampson, Karen L (EFANE)
**Subject:** FW: Green Lane decision

**Importance:** High

-----Original Message-----
From: Finan, Katherine (EFANE)
Sent: Wednesday, April 23, 2003 3:08 PM
To: Finan, Katherine (EFANE); Root, James V (EFANE); Hummel, Mike A (EFANE); Zielinski, Gregory J CDR (EFANE); Katacinski, Irene H (EFANE); Wise, Cathy LT(EFANE); Zanoli, Michael LCDR. (EFANE)
Cc: Wonderly, Daniel M (NAVFACHQ); Wilderman, Annie C (NAVFACHQ); Newport FH; Burnes, David Michael (CDR); Cornelia Mueller (E-mail); Joanne Galuska (E-mail); Ed Jankowski (E-mail); Dave Coleman (E-mail); Hubner, Jana L. (EFDLANT); Redding, Nolan LTJG (EFANE); Guglietti, Carl J (EFANE); O'Neill, Kate (EFDLANT); Petrone, David C (EFANE); Homick, Kenneth M (EFANE); Snyder, Thom F (EFANE); Marchiano, Angelo (EFANE); Thomsen, Gail D (EFANE); Abraham, Denise (EFANE)
Subject: Green Lane decision
Importance: High

To all,

This afternoon I received a phone call from Sue Lonigan (CLF housing) with the following direction concerning both the Greene Lane and Anchorage housing projects for Newport in light of the plans for privatization of housing in FY04:

1- Use the Greene Lane MCON funds to demolish as many Greene Lane units as possible up to the authorized total number of 126 as specified in the 1391. First focus of the demolition will be the off-line units in the Mayflower area. Since we have already demolished some GL units under the previous contracts, CLF needs to know how many units have been demo'd to date to determine the remaining number that can be demolished. Once that number is established, the Newport housing staff will advise us on the specific units to be demo'd. CLF would also like to include the gov't furnished construction materials currently in storage as part of the demolition contract; ideally we would receive some credit for salvage value. The balance of MCON funds will be used for PPV seed money.

Action items:

a. LT Wise, please advise on the number of units demolished to date.

b. Irene K., please cancel the current solicitation.

c. Once CLF receives the exact number and Newport identifies the specific units to be demolished, we need to be prepared to execute the demolition. CLF would like some assistance in determining a unit cost for the demolition based on most recent demolition costs.

2- Anchorage. CLF wants to stop work on the current renovation project (awarded Sep 02) and terminate the contract for convenience. In addition, CLF plans to demolish Anchorage housing using BP-22 funds, possibly FY03 and/or FY04 funds. CLF currently looking at availability of funds. Long-term plan is to clear the Anchorage site to permit the PPV developer to build new units on this site.

Action items: LT Redding, please stand by. I've asked CLF to send a formal request concerning their desire to T for C this project. I've advised CLF, based on the most recent Marquee report, that we are currently at 35% completion on this project.

b. We also need to be prepared to execute a demolition project at Anchorage, possibly done as base award in FY03 with an FY04 option if CLF provides split-year funds.

v/r Kathy

Katherine B. Finan
Activity Liaison Officer
Naval Facilities Engineering Command
EFA Northeast, Lester PA
DSN 443-0618
Phone: 610-595-0618
Fax: 610-595-0535
finankb@efane.navfac.navy.mil

> Sent: Thursday, April 24, 2003 10:32 AM
> To: Abraham, Denise (EFANE); Guglietti, Carl J (EFANE); Redding, Nolan LTJG (EFANE); Sampson, Karen L (EFANE); Finan, Katherine (EFANE)
> Cc: Petrone, David C (EFANE); Homick, Kenneth M (EFANE); Root, James V (EFANE); Burnes, David Michael (CDR); Krivinskas, Robert (EFANE)
> Subject: ANCHORAGE HOUSING REPAIRS
>
> All,
>
> I am at EFA Northeast HQ and just received word from EFANE OPS that COMLANTFLT Housing wants us to stop the contractor from doing anymore work on the Anchorage renovation contract. COMLANTFLT is looking to have all of Anchorage Housing demolished.
>
> Please provide the following status regarding the contract:
>
> 1. Number of units currently in contractor's possession
> 2. Number of units contractor has performed work on
> 3. Percent complet based on value of work completed and contract price
> 4. Amount of stored material (Items and dollar value estimate) and
>how and where is it being stored
>
> Please immediately prepare a draft letter suspending all the work and
>directing the contractor not to order anymore materials. Please
>forward to me at Ken Homick's e-mail address. Do not turnover anymore
>units to the contractor
>
> Kathy Finan,
>
> I understand there was mention of possibly modifying existing contract to demolish the housing units. The contract was awarded with FY02, FH,N expiring funds. The scope of the contract does not include demolition of housing units. We will not be able to use remaining contract funds to modify the existing contract or to award a new contract to do demolition. The demolition is out of contract scope (Requires J&A and contractor's concurrence to modify existing contract) and out of fiscal scope (Requires current year money). In addition, there will need to be additional planning effort before the demolition work can proceed (identification of lead paint, asbestos, and other scope of work, NEPA documentation, possible McKinney Act requirements, etc.). Do you know who (COMLANTFLT, CNRNE, or Local Housing Dept) is going to provide us a written request to end this contract? We will try to do a deductive modification vice a termination for convenience.
>
> v/r
> LCDR Zanoli

**lietti, Carl J. CIV ENGFLDACTNORTHEAST**

**From:** Redding, Nolan LTJG (EFANE)
**Sent:** Thursday, April 24, 2003 8:03 AM
**To:** Sampson, Karen L (EFANE); Abraham, Denise (EFANE)
**Cc:** Guglietti, Carl J (EFANE)
**Subject:** FW: ANCHORAGE REPAIRS

As of now, work is verbally stopped in Anchorage. I will be conducting inventory today and tomorrow for materials onsite. There is a question of whether to complete units partially done.
Nolan

-----Original Message-----
From: Lonigan, Susan M. CIV (Shelter Branch)
[mailto:Lonigan.Susan@navy.mil]
Sent: Wednesday, April 23, 2003 4:31 PM
To: Newport FH; Dave Coleman (E-mail); Ed Jankowski (E-mail)
Cc: Hummel, Mike A (EFANE); Root, James V (EFANE); Redding, Nolan LTJG (EFANE); Burnes, David Michael (CDR); Zanoli, Michael LCDR. (EFANE); Finan, Katherine (EFANE); Shannon, Alan (CNRNE); Ruth CAPT Cooper (NSNPT 00) (E-mail)
Subject: ANCHORAGE REPAIRS

Charlie, Dave, Ed,

Kathy's e-mail reports the repair work (funded 20 Sep 02) going on at Anchorage is 45% complete. Kathy arranged a conference call with LTJG Nolan Redding and me to discuss the current situation. The contract is N62470-02-C-0095, Anchorage Housing Repair. The work is the result of a FY02 Congressional budget book repair project and was intended to upgrade Anchorage and extend its useful life. Since the decision has been made to demolish the homes as part of the required divestiture, I suggest work be stopped on this contract as soon as feasible.

In order to stop the work, EFANE would like to have an activity/regional request so they can notify the contractor and reduce the inconvenience to him as soon as possible. LTJG Nolan says an e-mail with a follow-on letter would document the request.

As we're finding, the "devil's in the details" with this PPV.

Thanks for your help,
Sue

Susan M. Lonigan
COMLANTFLT Shelter, Code N469
(757) 836-4516, DSN 836
susan.lonigan@navy.mil

-----Original Message-----
From: Finan, Katherine (EFANE) [mailto:FinanKB@efane.navfac.navy.mil]
Sent: Wednesday, April 23, 2003 15:42
To: Newport FH; Dave Coleman (E-mail); Ed Jankowski (E-mail); Lonigan, Susan M. CIV (Shelter Branch)
Cc: Hummel, Mike A (EFANE); Root, James V (EFANE); Redding, Nolan LTJG (EFANE); Burnes, David Michael (CDR); Zanoli, Michael LCDR. (EFANE)
Subject: FW: Green Lane decision

FYI... per, LT Redding, AROICC, we are currently at 45% complete for Anchorage.

-----Original Message-----



NAV-53-021

AR 0132

(EFANE)
esday, April 23, 2003 3:37 PM
n, Katherine (EFANE)
: RE: Green Lane decision

thy,
he 35% was as of 1 April. They are closer to 45% now. I'll be standing by...
v/r,
NER

-----Original Message-----
**From:** Finan, Katherine (EFANE)
**Sent:** Wednesday, April 23, 2003 3:08 PM
**To:** Finan, Katherine (EFANE); Root, James V (EFANE); Hummel, Mike A (EFANE); Zielinski, Gregory J CDR (EFANE); Katacinski, Irene H (EFANE); Wise, Cathy LT(EFANE); Zanoli, Michael LCDR. (EFANE)
**Cc:** Wonderly, Daniel M (NAVFACHQ); Wilderman, Annie C (NAVFACHQ); Newport FH; Burnes, David Michael (CDR); Cornelia Mueller (E-mail); Joanne Galuska (E-mail); Ed Jankowski (E-mail); Dave Coleman (E-mail); Hubner, Jana L. (EFDLANT); Redding, Nolan LTJG (EFANE); Guglietti, Carl J (EFANE); O'Neill, Kate (EFDLANT); Petrone, David C (EFANE); Homick, Kenneth M (EFANE); Snyder, Thom F (EFANE); Marchiano, Angelo (EFANE); Thomsen, Gail D (EFANE); Abraham, Denise (EFANE)
**Subject:** Green Lane decision
**Importance:** High

To all,

This afternoon I received a phone call from Sue Lonigan (CLF housing) with the following direction concerning both the Greene Lane and Anchorage housing projects for Newport in light of the plans for privatization of housing in FY04:

1- Use the Greene Lane MCON funds to demolish as many Greene Lane units as possible up to the authorized total number of 126 as specified in the 1391. First focus of the demolition will be the off-line units in the Mayflower area. Since we have already demolished some GL units under the previous contracts, CLF needs to know how many units have been demo'd to date to determine the remaining number that can be demolished. Once that number is established, the Newport housing staff will advise us on the specific units to be demo'd. CLF would also like to include the gov't furnished construction materials currently in storage as part of the demolition contract; ideally we would receive some credit for salvage value. The balance of MCON funds will be used for PPV seed money.

Action items:

a. LT Wise, please advise on the number of units demolished to date.

b. Irene K., please cancel the current solicitation.

c. Once CLF receives the exact number and Newport identifies the specific units to be demolished, we need to be prepared to execute the demolition. CLF would like some assistance in determining a unit cost for the demolition based on most recent demolition costs.

2- Anchorage. CLF wants to stop work on the current renovation project (awarded Sep 02) and terminate the contract for convenience. In addition, CLF plans to demolish Anchorage housing using BP-22 funds, possibly FY03 and/or FY04 funds. CLF currently looking at availability of funds. Long-term plan is to clear the Anchorage site to permit the PPV developer to build new units on this site.

Action items: LT Redding, please stand by..I've asked CLF send a formal request concerning their desire to T for C this project. ve advised CLF, based on the most recent Marquee report, that we are rrently at 35% completion on this project.

b. We also need to be prepared to execute a demolition



NAV-53-022

Anchorage ... possibly done as base award in FY03 with an FY04
... CLF provides split-year funds.

...athy

...herine B. Finan
...ctivity Liaison Officer
Naval Facilities Engineering Command
EFA Northeast, Lester PA
DSN 443-0618
Phone: 610-595-0618
Fax: 610-595-0535
finankb@efane.navfac.navy.mil

**...etti, Carl J. CIV ENGFLDACTNORTHEAST**

**...om:** Root, James V (EFANE)
**...ent:** Tuesday, April 29, 2003 9:53 AM
**To:** Guglietti, Carl J (EFANE)
**Cc:** Raines, Robert B CAPT (EFANE); Manning, Cameron A CDR (EFANE); Zielinski, Gregory J CDR (EFANE); Petrone, David C (EFANE); Zanoli, Michael LCDR. (EFANE); Burnes, David Michael (CDR); Hummel, Mike A (EFANE); Finan, Katherine (EFANE); Abraham, Denise (EFANE)
**Subject:** RE: 02-0095 Anchorage Housing Suspension of Work

Carl-

Please hold off on issuing the suspension until I get back with you. Capt Raines has reservations about issuing it prior to final direction from Fleet and a solid determination that the demo won't be subject to McKinney Act review. We will be meeting Thursday (ROICC is in on that phonecon as well) and should have a better idea afterwards.

Thanks

Jim

-----Original Message-----
**From:** Guglietti, Carl J (EFANE)
**Sent:** Tuesday, April 29, 2003 9:41 am
**To:** Root, James V (EFANE)
**Cc:** Petrone, David C (EFANE); Homick, Kenneth M (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Sampson, Karen L (EFANE); Krivinskas, Robert (EFANE); Scott, Michael D (EFANE)
**Subject:** 02-0095 Anchorage Housing Suspension of Work
**Importance:** High

Jim,
LCDR Zanoli was on his way to training and asked me to pass this information along. CDR Burnes has decided to suspend all work effective today. The suspension letter is being drafted for LCDR Zanoli's signature and should be issued this afternoon.



NA-33-026
AR 0135

**Rodgers, Vivian CIV NAVFACWASH**

**From:** Zanoli, Michael LCDR. (EFANE)
**Sent:** Monday, June 02, 2003 4:13 PM
**To:** Guglietti, Carl J (EFANE); Krivinskas, Robert (EFANE); Lambalot, John P (EFANE); Lepage, Judith M (EFANE); Migneault, Robert E (EFANE); Montani, Vicky (EFANE); Rachupka, Craig J (EFANE); Redding, Nolan LTJG (EFANE); Sampson, Karen L (EFANE); Scott, Michael D (EFANE)
**Subject:** FW: Anchorage Housing demolition POAM

**Attachments:** scanned_.pdf

scanned_.pdf (33 KB)

Attached is formal letter requesting Anchorage project to be terminated.

-----Original Message-----
From: Lin, Willington (EFANE)
Sent: Monday, June 02, 2003 1:48 PM
To: Finan, Katherine (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Preston, Gregory C (EFANE)
Cc: Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE)
Subject: RE: Anchorage Housing demolition POAM

Hello NWPT team...I just received this letter from Region. We need to develop a plan forward to properly terminate the existing contract (N62470-02-C-0095)and also to rapidly develop a POAM for demolition, especially if fleet wants us to spend FY03 $.

My Q's...
Thoughts for a plan forward...termination and demolition?
McKinney steps?
Can we use the existing contract to perform demo?
Should we "stop work" the current contract?

VR/
Willie Lin

-----Original Message-----
From: Finan, Katherine (EFANE)
Sent: Thursday, May 29, 2003 2:30 PM
To: Lin, Willington (EFANE)
Subject: Anchorage Housing demolition POAM

Willie,

Going through my notes from the 1 May conference call, we need to develop a POAM for the Anchorage demolition project, to include real estate actions for McKinney screening.
On a related note, I received a call from CLF (Sue Lonigan) yesterday regarding Anchorage. Sounds like CLF will push to start demolition of some units in Anchorage this FY. We need to advise asap if this is doable, given the real estate actions required for McKinney. Shall we gather all the EFANE players to flesh out the POAM? Please advise.

Katherine B. Finan
Activity Liaison Officer
Naval Facilities Engineering Command
EFA Northeast, Lester PA
DSN 443-0618
Phone: 610-595-0618
Fax: 610-595-0535
finankb@efane.navfac.navy.mil

Apr. 2007 NAV Supp 0153



AR 0136

**Cheswick, Jennifer LTJG ENGFLDACTNORTHEAST**

**From:** Zanoli, Michael LCDR. (EFANE)
**Sent:** Monday, June 02, 2003 16:49
**To:** Lin, Willington (EFANE); Finan, Katherine (EFANE); Preston, Gregory C (EFANE)
**Cc:** Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE); Redding, Nolan LTJG (EFANE); Homick, Kenneth M (EFANE); Sampson, Karen L (EFANE); Montani, Vicky (EFANE)
**Subject:** RE: Anchorage Housing demolition POAM

Willie,

We have issued a stop work order a couple weeks ago on the Anchorage job and requested a settlement proposal. We are hoping the proposal will be in by the end of this week. We have the completed inventory of purchased materials from the contractor and have to verify it. We will do a government estimate and go through the modification process to attempt to do a bilateral deductive modification which will be coded as a termination for convenience and signed by a contracting officer with termination authority (i.e Marilyn Colot, Bob Smith, or CAPT Raines).

There is no legal means to spend the remaining project money on a new obligation (i.e. a new contract). The money is FY 2002 expired funds. If there is FY03 money available from somewhere else, then that's a different story. The demolition work is out of contract scope with the current contract. The only way to have work done under the existing contract is to provide current year funds and write a J&A for going sole source with current contractor. There are only 6 or 7 reasons allowed to limit competition and I don't think any apply in this case. The contractor would also have to be agreeable to do the work (No unilateral modification allowed since it is out of contract scope.)

r/MAZ

-----Original Message-----
From: Lin, Willington (EFANE)
Sent: Monday, June 02, 2003 1:48 PM
To: Finan, Katherine (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Preston, Gregory C (EFANE)
Cc: Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE)
Subject: RE: Anchorage Housing demolition POAM

Hello NWPT team...I just received this letter from Region. We need to develop a plan forward to properly terminate the existing contract (N62470-02-C-0095)and also to rapidly develop a POAM for demolition, especially if fleet wants us to spend FY03 $.

My Q's...
Thoughts for a plan forward...termination and demolition?
McKinney steps?
Can we use the existing contract to perform demo?
Should we "stop work" the current contract?

VR/
Willie Lin

-----Original Message-----
From: Finan, Katherine (EFANE)
Sent: Thursday, May 29, 2003 2:30 PM
To: Lin, Willington (EFANE)
Subject: Anchorage Housing demolition POAM

Willie,

Going through my notes from the 1 May conference call, we need to develop a POAM for

the Anchorage demolition project to include real estate actions for McKinney screening.

On a related note, I received a call from CLF (Sue Lonigan) yesterday regarding Anchorage. Sounds like CLF will push to start demolition of some units in Anchorage this FY. We need to advise asap if this is doable, given the real estate actions required for McKinney. Shall we gather all the EFANE players to flesh out the POAM? Please advise.

Katherine B. Finan
Activity Liaison Officer
Naval Facilities Engineering Command
EFA Northeast, Lester PA
DSN 443-0618
Phone: 610-595-0618
Fax: 610-595-0535
finankb@efane.navfac.navy.mil

**Purul, Anne M (EFANE)**

**From:** Colot, Marilyn D (EFANE)
**Sent:** Wednesday, June 04, 2003 8:25 AM
**To:** Purul, Anne M (EFANE)
**Subject:** FW: Anchorage Housing demolition POAM

POAM for DEMO Anchorage.xls

pull

-----Original Message-----
From: Preston, Gregory C (EFANE)
Sent: Tuesday, June 03, 2003 3:08 PM
To: Finan, Katherine (EFANE); Lin, Willington (EFANE); Scarpato, Katrina M (EFANE)
Cc: Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Colot, Marilyn D (EFANE); Lombardo, Ralph (EFANE); McGrath, John E (EFANE); Hakey, Phil A. (EFDLANT); Zamorski, Stephanie A (EFANE); Frye, Curtis A (EFANE); Wolfe, Mark R (EFANE); Lammer, Robert W (EFANE); Prymak, Helen (EFANE)
Subject: RE: Anchorage Housing demolition POAM

All-

This one is starting to get a bit off track in analysis, so please allow me to put my two cents in (and allow everyone to tell me I'm nuts if that is in fact the case). It appears that there is a disconnect somewhere (other than in my head)...

From a real estate perspective the overall project analysis is very simple - This project is either tied to the PPV or it's not! I've gotten different answers from different folks. Right now, I'm inclined to think that the demolition of the housing is beneficial to the PPV, but not tied to it - (i.e. - they are two separate actions - Phil Hakey please correct me if you think I'm wrong).

If this is the case, then everything Kathy Finan spells out below still holds true with respect to real estate despite the fact that the actions are in my opinion not tied together (i.e. - one action). We (Eileen Marengo in Real Estate specifically) will be required to comply with McKinney. We have interpreted this to mean that we only have to screen the improvements. Typically, homeless providers will question whether or not the improvements can be used off-site. In the past, we have included in our "McKinney Packages" a statement declaring the improvements not suitable for off-site use due to the fact that their structural integrity is compromised during any move. This typically "speeds up" the process as the homeless groups correctly are no longer interested in structurally compromised structures. We can do this again PROVIDED the folks at Newport furnish the appropriate determination supporting this conclusion.

Regarding timeframes, we still must complete the disposal by demolition process which is NOT an overnight ordeal. The process requires screening for DoD and McKinney. After the screening is completed, and assuming there is no interest, we then request GSA approval to proceed with demolition. FYI, I have not seen GSA deny such a request in my time with Navy. This process typically takes 120 days. Note this timeframe is predicated upon the value of the improvements being less than $500k – if it is greater than $500K then you are looking as substantially more time as process needs to be reported to Congress under Title 10, (experience factor says add another 3-4 months).

Bottom line is probably not what you want to hear ... we don't have enough information at this point to provide you with a POA&M that won't be "caveated". I've attached that "caveated" version to this message and it shows approximately 9 months FROM THE DATE OF PROJECT INITIATION/REQUEST – (i.e. - need (a) activity request including [1]completed SF118's showing ALL of the buildings to be demolished, and [2] Title 5 Federal Property Information Checklist, [3] Appropriate statements of findings, and [4] property record cards for structures to be demolished (b) major claimant approval – assume this to be Region and CLF).

STRONGLY suggest that activity begin preparation of SF118's immediately and get us started so we can accomodate and complete this action. At this point in time, I cannot even turn it over to my appraiser (Bob Lammer or Helen Prymak) for an evaluation of the applicability of the $500K threshold! Eileen has identified this project as a priority for her and is primed to complete once she gets everything she needs. In fact, she is willing to help by providing sample versions of previously completed forms. If she becomes a "pest", it is because I have directed her to become a pest and make sure this gets done ASAP.

v/r,
Greg.

PS - I'm not NEPA expert, but someone needs to re-examine the NEPA determination (s) if this is in fact two separate actions!

-----Original Message-----
From: Finan, Katherine (EFANE)
Sent: Monday, June 02, 2003 3:37 PM
To: Finan, Katherine (EFANE); Lin, Willington (EFANE); Scarpato, Katrina M (EFANE)
Cc: Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Preston, Gregory C (EFANE); Colot, Marilyn D (EFANE)
Subject: RE: Anchorage Housing demolition POAM

Willie,

resending this...Katrina has a new last name "Scarpato".

-----Original Message-----
From: Finan, Katherine (EFANE)
Sent: Monday, June 02, 2003 3:34 PM
To: Lin, Willington (EFANE); 'grossok@efane.navfac.navy.mil'
Cc: Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Preston, Gregory C (EFANE); Colot, Marilyn D (EFANE)
Subject: RE: Anchorage Housing demolition POAM

Willie,

IRT your questions:

As discussed, ROICC has already issued a stop work notice on this contract. What is left to do is a termination for convenience (per Marilyn Colot).

We can't use the same contract to do the demo work...this new work is out of scope financially and contractually.

McKinney applicability: Since Navy will need the underlying land for the PPV, it is my understanding that we need to do an off-site screening for McKinney. We may also be able to expedite the screening if HUD can provide a "non-suitability for off-site" determination. Eileen should be able to confirm the requirements and advise us on the steps.

There is one other issue we need to check. Specifically the NEPA requirements. This demo is tied to the PPV, so the environmental assessment for the PPV must include this action. I don't think the EA will start until FY04 because money has not been provided to our environmental planning group yet. Katrina Grosso is the POC for this. I think the plan is to build family housing on the same site, so this should be a catex anyway. Katrina, can you confirm?

v/r Kathy

-----Original Message-----
From: Lin, Willington (EFANE)
Sent: Monday, June 02, 2003 1:48 PM
To: Finan, Katherine (EFANE); Zanoli, Michael LCDR. (EFANE); Abraham, Denise (EFANE); Preston, Gregory C (EFANE)
Cc: Root, James V (EFANE); Katacinski, Irene H (EFANE); Chapman, Jerry (EFANE); Marengo, Eileen J (EFANE)
Subject: RE: Anchorage Housing demolition POAM

Hello NWPT team...I just received this letter from Region. We need to develop a plan forward to properly terminate the existing contract (N62470-02-C-0095)and also to rapidly develop a POAM for demolition, especially if fleet wants us to spend FY03 $.

My Q's...
Thoughts for a plan forward...termination and demolition?

McKinney steps?
Can we use the existing contract to perform demo?
Should we "stop work" the current contract?

VR/
Willie Lin

-----Original Message-----
From: Finan, Katherine (EFANE)
Sent: Thursday, May 29, 2003 2:30 PM
To: Lin, Willington (EFANE)
Subject: Anchorage Housing demolition POAM

Willie,

Going through my notes from the 1 May conference call, we need to develop a POAM for the Anchorage demolition project, to include real estate actions for McKinney screening.

On a related note, I received a call from CLF (Sue Lonigan) yesterday regarding Anchorage. Sounds like CLF will push to start demolition of some units in Anchorage this FY. We need to advise asap if this is doable, given the real estate actions required for McKinney. Shall we gather all the EFANE players to flesh out the POAM? Please advise.

Katherine B. Finan
Activity Liaison Officer
Naval Facilities Engineering Command
EFA Northeast, Lester PA
DSN 443-0618
Phone: 610-595-0618
Fax: 610-595-0535
finankb@efane.navfac.navy.mil

**Meagher, Peggy A CIV ENGFLDACT NORTHEAST**

**From:** Redding, Nolan LTJG (EFANE)
**Sent:** Tuesday, September 16, 2003 3:50 PM
**To:** 'Charles Silvia (E-mail)'; 'Mark Silvia (E-mail)'; 'MaryBeth Oliveira (E-mail)'
**Cc:** 'mulhernb@nsnpt.navy.mil'; Timothy, Gerald A (EFANE); Abraham, Denise (EFANE); Sampson, Karen L (EFANE); Quattlebaum, Armand LCDR (EFANE); Guglietti, Carl J (EFANE); Scott, Michael D (EFANE); Lin, Willington (EFANE); Finan, Katherine (EFANE)
**Subject:** Anchorage Boiler Vent Stacks

**Importance:** High

Housing,
Since the units in Anchorage are not to be demolished this fiscal year and it is uncertain when these will come down, there is an issue that has been raised by Public Works with respect to the boiler vent stacks. The attached images show the vent stacks penetrating the roof and the temporary venting setup. As the boilers were installed, the new 6" vent stack was temporarily connected into (2) of the 4" stacks due to the snow and weather conditions last winter which prevented roof work.

Housing:
I need confirmation that you would like to have the contractor remobilize and repair the vents and roof penetrations. This is still part of the contract and falls within correcting safety deficiencies. I also need to know which units you would like them to fix, occupied or all of the units with the new boilers. Attached is a list of the addresses with new boilers.

Contracting folks:
I plan to draft a letter to be signed by a ROICC Newport contracting officer directing Oak Environmental to correct the safety deficiency before the winter. If there are any concerns with this, let me know.

v/r,
NER

*Nolan Redding, LTJG, CEC, USNR*
ROICC Newport Office
1 Simonpietri Drive
Newport, RI 02841
(401) 841-1763 DSN: 948-1763
Fax: (401) 841-1349
reddingne@efane.navfac.navy.mil

vent_stacks.jpg vent_stacks_inside.jpg Boilers Completed.xls

EXHIBIT
N-Redding
1
3-8-07



NAV S2 008

110 Lawrence
1 Constellation
116 Lake Eerie
102 Lake Eerie
106 Lake Eerie
124 Lake Eerie
130 Lake Eerie
108 Lake Eerie
114 Lake Eerie
112 Lake Eerie
120 Lake Eerie
128 Lake Eerie
132 Lake Eerie
136 Lake Eerie
140 Lake Eerie
138 Lawrence
141 Lawrence
143 Lawrence
137 Lawrence
135 Lawrence
106 Lawrence
116 Niagara
129 Lawrence
130 Lawrence
134 Lawrence
125 Lawrence
118 Lawrence
126 Lawrence
120 Lawrence
102 Lawrence
115 Lawrence
112 Lawrence
111 Lawrence
100 Lawrence
9 Constellation
6 Constitution
9 Constitution
128 Lawrence
117 Lawrence
107 Lawrence
103 Lawrence
102 Niagara
110 Niagara
120 Niagara
124 Niagara
113 Niagara
101 Niagara

NAU 52- 011

**Sampson, Karen L (EFANE)**

**From:** Colot, Marilyn D (EFANE)
**Sent:** Friday, October 31, 2003 9:20 AM
**To:** Abraham, Denise (EFANE)
**Cc:** Sampson, Karen L (EFANE)
**Subject:** RE:

Jim Root said a definite yes.

-----Original Message-----
**From:** Abraham, Denise (EFANE)
**Sent:** Friday, October 31, 2003 9:17 AM
**To:** Colot, Marilyn D (EFANE)
**Cc:** Sampson, Karen L (EFANE)
**Subject:** RE:

Not yet [redacted]

But we are working currently on the documentation.

Denise

-----Original Message-----
From: Colot, Marilyn D (EFANE)
Sent: Friday, October 31, 2003 9:15 AM
To: Abraham, Denise (EFANE)
Subject:

Denise,

Did you ever send in the T?C for ANchorage?



NAV-53-038
Encl (2)

**Sampson, Karen L (EFANE)**

**From:**
**Sent:**
**To:**

**Cc:**
**Subject:** [redacted]

-----Original Message-----
**From:** Colot, Marilyn D (EFANE)
**Sent:** Tuesday, October 14, 2003 12:40 PM
**To:** [redacted] Sampson, Karen L (EFANE); Abraham, Denise (EFANE); Root, James V [redacted]
**Cc:** Katacinski, Irene H (EFANE)
**Subject:** Anchorage

All,

I confirmed with Jim Root- per the 27 MAY 03 letter from the region- the contract with Oak is to be terminated for the convenience of the Govt. Newport- pls prepare T/C for signature by me.

Irene-who is acting this week-you?

VR
Marilyn



039
NA-53-
AR 0146

EXHIBIT 3. N. Redding 3-8-07

**Sampson, Karen L CIV NAVFAC MIDLANT**

| | |
|---|---|
| **From:** | Sampson, Karen L (EFANE) |
| **Sent:** | Monday, December 01, 2003 1:09 PM |
| **To:** | Colot, Marilyn D (EFANE) |
| **Cc:** | Abraham, Denise (EFANE) |
| **Subject:** | T4C of Anchorage housing project |
| **Attachments:** | T4C recommendation.pdf; SF 30 T4C.pdf; SF 30.doc; Encl 1 Award 02C0095.pdf |

T4C ımendation.pdf (186 SF 30 T4C.pdf (28 KB) SF 30.doc (71 KB) Encl 1 Award 02C0095.pdf (...

Here is the termination recommendation and proposed mod for the Anchorage housing project. I also sent the word version should you want to change something.

Please let me know if you want the remaining enclosures emailed to you.

v/r
Karen

# T4C Recommendation

From: ROICC, Newport, RI
To: EFANE

Subj: RECOMMENDATION TO TERMINATE FOR CONVENIENCE CONTRACT N62472-02-C-0095, ANCHORAGE HOUSING REPAIRS, NAVAL STATION, NEWPORT, RI

Ref: (a) FAR Part 49
(b) DFAR Part 49
(c) NFAS Part 49
(d) BMS S-17.9 Process

Encl: (1) Signed copy of contract, including award document, bonds, all provisions, clauses, specifications, drawings and Modifications
(2) All Relevant Documentation:
  a. Email from Kathy Finan, EFANE, dtd 23 Apr 03
  b. ROICC Newport Suspension of work ltr dtd 2 May 03
  c. Commander, Navy Region Northeast ltr dtd 27 May 03
  d. Oak Environmental proposal dtd 13 Aug 03
  e. Oak Environmental ltr dtd 30 Sep 03
  f. ROICC Newport ltr dtd 22 Oct 03
  g. Oak Environmental ltr dtd 24 Oct 03

(3) Government Estimate to complete
(4) Proposed Termination for Convenience modification

1. In accordance with references (a) – (d), the ACO recommends that the subject contract be terminated for convenience. Enclosures (1) – (4) provide the supporting background information necessary to assist in making this determination.

1. BACKGROUND INFORMATION:
  a. Contract number and title: N62472-02-C-0095, ANCHORAGE HOUSING REPAIRS (Award was made under the 8(a) program)
  b. Date of award: 26 September 2002
  c. Value of contract at time of award: $2,453,163.00
  d. Original contract completion date: 30 September 2003
  e. Contractor's name and address: Oak Environmental Consultants, Inc., 600 N. Route 73, Suite 12, Marlton, NJ 08060
  f. SBA District Office: U.S. Small Business Administration, New Jersey District Office, Two Gateway Center – 15th Floor, Newark, NJ 07102
  g. Surety's name and address: Lincoln General Insurance Company, 2023 Route 70, West Cherry Hill, NJ 08002
  h. Modifications P00001 through P00002 have not increased or decreased the contract amount of $2,453,163.00 and have not extended the contract completion date of 30 September 2003.
  i. ROICC Newport, RI Suspension of Work letter dtd 2 May 2003.
  j. Commander, Navy Region Northeast letter dtd 27 May 2003.
  k. Oak Environmental Consultants Proposal dtd 13 Aug 2003.
  l. Amount paid to date: **$1,095,444.00**
  m. Balance of funds remaining: **$1,357,719.00**
  n. Contractor's unpaid earning for work through 30 Sep 03: $3,234.00 plus the work currently being performed as directed in the ROICC letter dated October 22, 2003.

NAV-53-002

o. Inventory (List all work in place):
Mechanical Rooms - Completed 46 of 54 installations
Bathrooms - Completed 98 of 240 repairs and incidental work (lights, smoke detectors, CO/smoke detectors)
Patio Doors - Completed 41 of 118 installations

p. Percentage of completion: 45% (Describe the areas and extent of work performed):
Weighted value of phases of work (bolded % is amount WIP)
$599,686 - Mechanical (25%) **(85%)**
$345,669 - Patio Stairs (15%) **(0%)**
$1,000,805 - Bathrooms (40%) **(41%)**
$82,300 - Front Entrance (3%) **(0%)**
$126,766 - Columns (5%) **(0%)**
$142,512 - Lights/Smoke/CO (6%) **(41%)**
$106,362 - Patio Doors (4%) **(35%)**
~~$49,063 - Bond (2%) **(100%)**~~
**$2,453,163 - Total Contract**

q. **List any corrective action required**: ROICC ltr dtd 22 Oct 03, directs the contractor to complete the scope of work stated in the contract for all installed boilers due to a potential safety deficiency identified by the Naval Station boiler inspector.

r. List of materials and supplies at site:
Stored Material:

Items: 7 boilers, 7 water heaters, misc. piping and controls for mechanical installations, at least 50 tubs, 50 surrounds, 50 toilets, 50 medicine cabinets, 25 patio doors, approx. 2,000 SF of 2" floor tile, 50 smoke detectors, 200 interior lights, and various incidental materials required for work in bathroom repairs.

Approx $ value: For the last invoice, we held back $30,500 for stored materials not substantiated by sufficient evidence. I do not have a current inventory of all materials delivered in the last week or so, but taking a very rough swag at it (using S.O.P. values) - this material could be worth **$180,000**.

Stored: This material is stored on site in 8 storage trailers 8'x40'. I have caught wind that some of the cabinetry and patio doors are being assembled offsite and could be stored in the vendor warehouses awaiting delivery to the site. I don't have a good number for this.

2. DISCUSSION

a. **Chronology of events:**

- 26 September 2002, the contract was awarded under the 8(a) program and provided for Repairs to Anchorage housing units.
- 23 April 2003, Received an email from Kathy Finan, stating that CLF wanted to stop work and terminate for convenience the remaining work
- 2 May 2003, ROICC, Newport issued a Suspension of Work to Oak Environmental
- 27 May 2003, Received official notice from Commander, Navy Region Northeast (N7) requesting work on subject contract cease immediately, due to the plan for privatization.
- 13 August 2003, Received a proposal from Oak Environmental Consultants for the Termination for Convenience
- 30 September 2003, Received a letter from Oak Environmental requesting release of their performance bond for this project.
- 22 October 2003, ROICC Newport issued a letter to Oak Environmental directing them to correct a safety deficiency with the boiler stacks.
- 24 October 2003, Oak Environmental letter
- 31 October 2003 Email confirming the Termination of the Anchorage housing project

b. Government estimate of termination cost: $61,234.00

c. Funds available for termination cost: $1,354,485.00 minus the work the contractor is performing in regards to the ROICC letter of October 22, 2003.

NAV-53-003

3. RECOMMENDATIONS:

Based on the foregoing, termination for convenience is in the Government's best interest for the following reasons:

The Commander, Navy Region Northeast has requested termination of convenience for the following reason. Programmatic changes to the concept plan for privatization of family housing have identified a need for the underlying land at Anchorage; therefore, the existing Anchorage housing units will need to be demolished. New construction at the Anchorage site will provide housing units that meet the latest requirements and criteria.

Denise M. Abraham

CONTRACTING OFFICER

I have reviewed the above for form and legality:

Counsel Name
COUNSEL

DATE

Level 3 Termination Contracting Officer approval:

Level III Contracting Officer Name
Termination Contracting Officer

DATE

NAV-S3-004

**Ed Eichen**

**From:** Ed Eichen
**Sent:** Tuesday, January 06, 2004 5:13 PM
**To:** Bruce Newman; Mike Delasandro
**Subject:** FW: Termination for convenience

-----Original Message-----
**From:** Damian Cassin [mailto:PCMCASSIN@msn.com]
**Sent:** Tuesday, January 06, 2004 5:13 PM
**To:** Ed Eichen; Bruce Newman
**Subject:** Fw: Termination for convenience

---- Original Message ----
**From:** Abraham, Denise M CIV NE09TC
**To:** Damien Cassin (E-mail)
**Cc:** Sampson, Karen L CIV NE09TC ; Redding, Nolan E LCDR NE09TC
**Sent:** Tuesday, January 06, 2004 3:53 PM
**Subject:** Termination for convenience

Mr. Cassin,

Below is the information for the termination for convenience.

Contract value $2,453,163.00
minus
Paid to date $1,095,444.00
$1,357,719.00
minus
Mod P00003 $577,719.00 - de-obligated amount
Balance $780,000.00

Mod P00003 considered potential costs to include:

Eichleay proposal
Stored material
work in place but not paid for
Work for vent stacks
subcontractor costs

This email does not indicate entitlement to any costs associated with the termination.

Denise Abraham

for the letter from the client which didn't come until the end of May, because then you have a holiday in there and I was leaving so I'm processing out.

Q. You didn't really have a chance --

A. I didn't really have a chance to do that. However, by doing what I did, at the time, by issuing the suspension letter and asking for the proposal at the time that was done to get a jump on things because if Oak Environmental could have provided their proposal within two weeks, three weeks, that may have put us in a position to proceed with negotiations and come up with a bilateral modification.

Q. Looking, again, at the May 2 letter which is page 51 of the administrative report, I understand your testimony that you don't recall why or who decided on a date of May 1, 2004. I am wondering though, Mr. Zanoli, did you consider instead of putting that date in there saying something to the effect that the contract is suspended for an indefinite period of time?

A. I don't know is the answer. I mean I just don't recall. I don't recall if I, if that was discussed with our counsel. It's possible, I

may have talked to counsel.

MR. SCHROEDER: You shouldn't discuss what you discussed with your counsel so please don't speculate on what you --

THE WITNESS: Okay. The answer is I don't know. I just don't know. I don't remember.

MR. PAYNE: So you are not sure what he discussed with counsel in terms of during a time period, during the administration of the contract is subject to any sort of privilege. It has nothing to do would this lawsuit.

THE WITNESS: Regardless my answer is I just don't know. I don't recall.

BY MR. PAYNE:

Q. Okay.

A. May have, I may not have.

Q. Try to understand my difficulty that I'm having, Mr. Zanoli, I mean this is a very specific date, May 1, 2004. It's a year in advance. I'm wondering why not April 1, why not February 1, why not you are hereby suspended for three months. This is very, very specific and it seems to be about one year. I guess May 1 is 365 days from May 2 of 2003. Can you help me out on

that at all or you just don't recall?

A. I just don't recall exactly why that date was picked. I mean there has to be a date picked if you are going to put in a date.

Q. It's just that, you know, you are right, you have to pick a date and that means somebody had to make a decision to use that date.

A. Uh-huh.

Q. Okay. And you don't know who made that decision?

A. No, I mean, I signed the letter so ultimately it's me, I picked the date; but why I specifically picked that date, was it in consultation with somebody, I just say, let me pick that date because I don't know when I'm going to get the suspension letter or the request for termination for convenience, it may be a month, two months, three months, the next day. I don't recall when. All I can do is speculate.

MR. PAYNE: I understand. I ask you to take a look at another document that the court reporter has and I'll ask it to be marked as Exhibit 3 and it is from Michael Zanoli and it is sent on June 2, 2003 at 4:13 p.m.

(WHEREUPON, Zanoli Exhibit No. 3