IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OAK ENVIRONMENTAL CONSULTANTS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-113C (Judge Horn) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO THE DEFENDANT'S REPLY IN SUPPORT OF THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Drive, Suite 100
Ft. Washington, PA 19034
Tel: 215-542-2777
Fax: 215-542-2779
E-mail: mhp@phslegal.com

Attorney for Oak Environmental Consultants, Inc.

July 18, 2007

**TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. OAK Has Satisfied the Elements Required for Eichleay Damages . . . . . . . . . . . . . . . . . . . . . . 1

A. OAK Has Demonstrated That The Government Caused A Delay Of Uncertain Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. The Suspension Was For An Unreasonable Period of Time And Was Neither Authorized by the Contract Nor Was It Definite . . . . . . . . . . 2

2. The Suspension Was Indefinite And Does Not Preclude OAK's Claim For Eichleay Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3. OAK Has Demonstrated That What The Defendant Refers To As A Definite Suspension Was Actually Indefinite . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. OAK Has Satisfied The Second Element Of The Eichleay Test-That a Government-Caused Delay Extended The Original Time For Performance . . . . . . . . 7

C. OAK Has Established That It Was On Standby And That It Was Unable To Take On Other Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

D. OAK Has Not Attempted To Rewrite Eichleay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II. OAK's Alternative Claim For An Equitable Adjustment For Unabsorbed Home Office Overhead Should Be Allowed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Cases**

All State Boiler, Inc. v. West, 146 F.3d 1368
(Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Blount Brothers Constr. Co. v. U.S., 172 Ct.Cl. 1 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Capital Electric Co. v. U.S., 729 F.2d 743, (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CEMS,Inc. v. U.S., 59 Fed. Cl. 168 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fireman's Fund Insurance Company v. U.S., 909 F.2d 495 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mech-Con Corp. v. West, 61 F.3d 883 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nicon, Inc. v. U.S., 331 F.3d 878 (Fed.Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Night Vision Corp. v. U.S., 469 F.3d 1369 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

P.J. Dick Inc. v. Principi, 324 F.3d 1364,
(Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Reservation Ranch v. U.S., 39 Fed. Cl. 696 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Statute**

28 USC 1491(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Acquisition Regulations**

FAR 52.242-14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7

FAR 52.249-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OAK ENVIRONMENTAL CONSULTANTS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-113C<br>(Judge Horn) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO THE DEFENDANT'S REPLY IN SUPPORT OF THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, Plaintiff, OAK Environmental Consultants, Inc., respectfully submits this reply in support of the Plaintiff's cross-motion for summary judgment and in further opposition to the Defendant's motion for summary judgment. We rely upon the complaint, the joint and supplemental joint stipulations of fact, the administrative record, the cited excerpts of deposition transcripts, and the affidavit of Eduard J. Eichen. For the reasons set forth in our opening brief, we respectfully request that the Court grant summary judgment in favor of the Plaintiff and deny the Defendant's motion for summary judgment.

## ARGUMENT

### I. OAK Has Satisfied the Elements Required for Eichleay Damages

The parties appear to agree that the requirements for recovery of Eichleay damages include that the contractor must first prove that there was a government-caused delay of

uncertain duration; that the original time for performance of the contract was thereby extended; and, that the contractor must then prove that it was required to remain on standby during that delay. P.J. Dick Inc. v. Principi, 324 F.3d 1364, 1370 (Fed.Cir. 2003). As stated in the Plaintiff's opening brief, OAK fulfills each of the foregoing criteria and is therefore entitled to Eichleay damages.

### A. OAK Has Demonstrated That The Government Caused A Delay Of Uncertain Duration

#### 1. The Suspension Was For An Unreasonable Period Of Time And Was Neither Authorized By The Contract Nor Was It Definite

The Defendant correctly asserts that the contract permitted the contracting officer to suspend the work for a "reasonable" period of time, but completely misconstrues what is reasonable. The Suspension of Work clause (FAR 52.242-14), provides relief to contractors for unreasonable, government-caused delays to the performance of the contract, CEMS, Inc. v. U.S., 59 Fed. Cl. 168 (2003). Although the reasonableness of a delay is determined on a case-by-case basis, this Court has held an agency liable for a one year suspension of work. Blount Brothers Constr. Co. v. U.S., 172 Ct.Cl. 1 (1965). In the instant case, a one year suspension, extending the contract eight months beyond its completion date, is unquestionably unreasonable, entitling OAK to recover compensation for the suspension. Blount Brothers, supra.

#### 2. The Suspension Was Indefinite And Does Not Preclude OAK's Claim For Eichleay Damages

The government's entire argument appears to rest upon whether or not the government-directed suspension of work was for a definite period of time. There is no question that the letter dated May 2, 2003 (AR 51) stated that the suspension would last until May 1, 2004. The ultimate question, however, is whether it is sufficient for the government to simply specify a one-year duration in order to make the suspension seem definite, or whether it is necessary and

reasonable to examine whether the suspension was, in fact, definite. It appears to the Plaintiff that the only thing that was definite about the suspension was that the government "definitely" did not want to be responsible for the payment of the Plaintiff's extended home office overhead.

There is no question that the government did not plan or intend for the suspension to last for one year; there was no plan to resume work in the future; the government was under a directive to "close out" the contract (AR 52, 130); and, the government planned to terminate the contract for convenience as early as April 23, 2003 (AR 130). In addition, there is no question that the suspension did not last for one year and that the contract was terminated for convenience on December 12, 2003 (AR 32-35). It is completely disingenuous, therefore, for the government to argue that OAK should have known that its contract was "definitely" suspended for one year while, at the same time arguing that OAK "had been asked on more than one occasion to submit a close out proposal." (Defendant's Reply Brief, Page 9). Most assuredly, there would have been no reason for the government to have sought to close out a contract that was under a one year definite suspension.

In arguing All State Boiler, Inc. v. West, 146 F.3d 1368, at 1380 (Fed.Cir. 1998), the Defendant asserts that the "Government can avoid liability for unabsorbed overhead expenses in the future by not keeping the contractor on standby during the suspension." (Def.'s Reply Brief, Page 5). The Defendant takes a judicial decision that applied the law to the facts of a particular case, and now seeks to misconstrue the facts in this case in such a way as to accommodate the law in All State Boiler.

What the Defendant overlooks is that the Court of Appeals for the Federal Circuit ruled that the government could avoid liability for extended overhead "by fixing, at the outset of the suspension period, a future date on which the contractor will be expected to return to work, or by

allowing the contractor a 'remobilization' period at the end of the suspension period." (Emphasis added). Id. at 1380, citing Mech-Con Corp. West, 61 F.3d 883, at 887 (Fed.Cir. 1995). Here, the government did not expect the Plaintiff to return to work and, to the contrary, knew with certainty that it would not.

The Defendant's misapplication of the law is clearly shown in its statement that "... the government had a choice to either suspend OAK's contract for a definite time, and avoid liability for unabsorbed overhead expenses, or to suspend OAK for an indefinite period of time, and risk liability. The Government chose the former course of action." (Def.'s Reply Brief, Page 5). The problem with this argument is that it demonstrates the Defendant's pre-occupation with engineering a desired outcome, rather than providing for an outcome that was fair and appropriate under the circumstances of the case. In addition, the Defendant ignores another and even more appropriate choice – a prompt termination for convenience in the first instance.

The Plaintiff is a minority contractor under the SBA's 8(a) program, and the underlying contract was set aside for 8(a) contractors. (AR 1; Aff. Of Eduard J. Eichen, ¶ 2). By definition, 8(a) contractors are small companies with limited bonding capacities and limited resources who cannot easily weather an unreasonable period of suspension when there is no opportunity to have the company's home office overhead be absorbed by other work. Interestingly, although the Defendant concedes that "the Navy's goal was to reduce the inconvenience of a stoppage to OAK as soon as possible," it completely ignores the fact that nothing could have been more inconvenient to OAK than a prolonged suspension without compensation for unabsorbed home office overhead. (Defendant's Reply Brief, Page 7; Supp. Jt. Facts ¶ 50; AR 132).

**3. OAK Has Demonstrated That What The Defendant Refers To As A Definite Suspension Was Actually Indefinite**

A significant portion of this section of the Defendant's Reply Brief has been addressed in the preceding section and will not be repeated here. The Defendant's recitation of numerous stipulated facts serves to emphasize the inconsistent nature of the Defendant's argument, however. While arguing that the suspension was for a definite period of one year, the Defendant concedes that "as of April 29, 2003, the status of the privatization was still uncertain and the situation was still evolving." (Def.'s Reply Brief, Page 7). Since it was the privatization of base housing that generated the suspension of work, the description of the privatization as "pending" hardly suggests that the suspension would definitely last for one year. In addition, the Defendant's further assertion that "A suspension clearly was appropriate, first to ensure that the privatization actually was going to go through. . ." is another admission that the period of the suspension was indefinite. (Defendant's Reply Brief, Page 12).

On the other hand, the Defendant argues that the privatization was confirmed on May 27, 2003, and implies that the Plaintiff should have known that the closeout of the project was a certainty. (Defendant's Reply Brief, Pages 7-8). The Defendant goes on to dismiss Plaintiff's argument that the contract could have, and should have, been terminated for convenience in the first place as "immaterial," and "second-guessing" of the contracting officer's administration of the contract, but concludes that "In light of the circumstances, the Government acted more than reasonably when it suspended the contract for one year." (Defendant's Reply Brief, Pages 6 and 8).

The "circumstances" that the Defendant refers to occurred after the May 2, 2003 suspension of work order was issued. Those circumstances included the certainty, as of May 27, 2003, that the work would not be resumed (AR 2), which meant that there was no longer a basis

to continue a "definite" suspension of work. The Defendant cannot justify a "definite" one year suspension of work by asserting that the privatization of base housing that purportedly led to the suspension was "pending" and "evolving" as of April 29, 2003 (Def. Reply Brief, Page 7), while further conceding that the close out of the contract was a certainty one month later as of May 27, 2003. (AR 52). Once the decision to close out the contract was made clear as of May 27, 2003, there was no longer any work to suspend. (In fact, the decision to close out the contract by a termination for convenience was made by the Commander, Atlantic Fleet, on April 23, 2003. AR 130).

It is well-recognized that government discretion in contracting is tempered by the standard of reasonableness and such discretion is not unfettered. Reservation Ranch v. U.S., 39 Fed.Cl. 696, 714-715 (1997) and cases cited therein. OAK submits that the suspension of work for a period eight months past the original completion date followed by a termination three months past the original completion date can hardly be deemed reasonable contract administration.[1]

The Defendant's further argument that the Plaintiff somehow delayed the ultimate termination for convenience by not promptly presenting a closeout proposal is without merit. There was nothing about the timing of the closeout proposal that should have prevented the Defendant from terminating the contract for convenience – something that it should have done in

---

[1] The Defendant's citation of Night Vision Corp. v. U.S., 469 F. 3d 1369 (Fed.Cir. 2006) for the proposition that OAK may not second guess the government's contract administration (Def.'s Reply Brief, page 6) is misplaced because the case dealt with the government's choice of a method of procurement, something well within its discretion. Similarly, the Defendant's citation to Fireman's Fund Insurance Company v. U.S. 909 F.2d 495 (Fed.Cir.1990) for the proposition that the government has "considerable leeway in administering contracts." (Def.'s Reply Brief, page 6) is improper because the case deals with a surety's liability for reprocurement costs and is not related to the question of whether a suspension of work was appropriate when a termination for convenience had been directed by higher authority.

the first place. In fact, the Termination for Convenience clause allows a contractor up to one year to present a settlement proposal, implicitly recognizing that the presentation of a proposal can take considerable time. (FAR 52.249-2).

Throughout its argument, the Defendant continually suggests that a suspension of work is an appropriate, if not a required, prerequisite to a termination for convenience. The Defendant provides no authority for such a proposition. In reality a suspension of work and a termination for convenience are two very different, and unrelated, administrative actions. If a contract is to be closed out, as was the case here, there is no reason to suspend performance – either definitely or indefinitely. If a project is to be resumed after a suspension, there is no reason to request a closeout proposal.

It must be noted that the clause is entitled “Suspension of Work,” (FAR 52.242-14) which inherently presumes that there will be an eventual resumption of work. The clause is not intended to provide the government with the ability to unduly, or unreasonably, delay the closeout of a contract once a directive to terminate for convenience has been issued. This is particularly true when the additional time taken by the government is at the cost of unabsorbed home office overhead incurred by a small business minority contractor.

**B. OAK Has Satisfied The Second Element Of The Eichleay Test – That A <u>Government-Caused Delay Extended The Original Time For Performance</u>**

The Defendant asserts that there was no extension of contract performance because the contract was effectively ended through a suspension of work order issued before the original contract completion date. (Defendant’s Reply Brief, Page 10). If the contract was “effectively ended,” as the Defendant suggests, why wasn’t the contract terminated for convenience and the obligations under the bond discharged? We know of no regulation or case law that suggests that a federal government contract can be “ended” through the operation of the Suspension of Work

clause. Indeed, the Defendant cannot have it both ways – the government cannot effectively end a contract through a suspension order, and also definitely suspend a contract through a suspension order with the government reserving the right to direct the contractor to resume work at any time. In reality, the record establishes that OAK's contract was indefinitely suspended because of the "pending" and "evolving" privatization of base housing.

To suggest, as does the Defendant, that the contract was not extended ignores the facts. OAK's performance was suspended for one year beginning on May 2, 2003. (AR 51). The original contract completion date was September 30, 2003. (JSF ¶¶ 3 and 24). Thus, the contract completion date initially was constructively extended for eight months (September 30, 2003 to May 1, 2004). During that eight month period, OAK performed new work on the housing units as a result of the Navy's directive to install the new boiler stacks, and the Navy compensated OAK for that work. (See boiler repair discussion below). Thus, the government "extended" the contract performance time, even though it did not formally issue a time extension.[2]

OAK was on standby during the suspension period and performed additional contract work (boiler connections) at the Navy's direction, after the original completion date. This performance period in January and February 2004, after the September 30, 2003 completion date, merited a time extension and constituted a resumption of contract performance. The Navy, in an attempt to escape liability for extended home office overhead, did not formally extend the contract, though it should have done so. Therefore, OAK was entitled to recover unabsorbed home office overhead under the Eichleay formula, as set forth in OAK's cross-motion for summary judgment, because the contract performance period should have been extended to

[2] Furthermore, because the contract was terminated for convenience after the contract completion date, the contract must necessarily have been extended to at least December 12, 2003, even without a formal time extension.

account for this new work.

As part of its effort to avoid liability for the extended performance time, the government asserts that the temporary boiler connections were safety deficiencies created by OAK, not by the Navy (Defendant's Reply Brief, page 12) and that OAK was merely correcting its own defective work. (Defendant's Reply Brief, page 16). This assertion misconstrues the facts and deliberately misleads the court by implying that the safety issue was OAK's creation when the government knows that this contention is contradicted by the record. The record clearly demonstrates that OAK was directed by the Navy to make the temporary hook-up due to the inclement weather and the need to avoid roof penetrations. (JSF ¶ 20, AR 143).

Furthermore, the Navy paid OAK over $37,000.00 in January and February 2004 after the temporary hook-ups were changed to the permanent stacks. (JSF ¶¶ 35-36). It is well-recognized that the government does not pay a contractor to correct deficient work; therefore the payments to OAK after the contract termination are further evidence that the temporary connections were not safety defects for which OAK was at fault. The Navy recognized that it directed OAK to perform the temporary connections when inclement weather was not conducive to making roof penetrations and paid OAK to install new connections for the boilers in the housing units when the Navy determined that permanent connections were needed.

The government speculatively argues that OAK created the delays in correcting the boiler connections. (Def.'s Reply Brief, page 13), with no support for such a notion in the record. The fact is that the Navy was uncertain whether the temporary boiler connections were going to be made permanent, given the Navy's proposed plan to demolish the housing units. As late as September 16, 2003, the Assistant Officer in Charge of Construction (AROICC) sought confirmation from other Navy officials that the Navy wanted the contractor to remobilize and

repair the boiler connections since the housing units were slated for demolition. (AR 143). He also requested direction from these officials as to whether the contractor should only work in the occupied units or in all of the units.

Implicit in the AROICC's inquiry was the fact that the Navy, before September 16, 2003, did not want this connection work performed and had not determined what units were to be worked on because of the proposed demolition. The government overlooked all of these facts in its attempt to make this problem OAK's responsibility when the Navy actually directed the temporary hook-ups, delayed its decision on what to do with the connections, and then directed OAK to remobilize and paid it to make the new connections. (JSF ¶¶ 35-36, AR 143).

The government asserts on page 13 of its reply brief that had OAK not delayed its work into winter weather it would not have had to make the temporary connections, thereby negating the need to come back and correct the "safety deficiencies." There is no citation to any document in the Administrative Record or a joint stipulation of fact supporting this assertion because there is no evidence whatsoever to support this bold and outlandish statement.

### C. OAK Has Established That It Was On Standby And That It Was Unable To Take On Other Work

As explained above and in the Plaintiff's opening brief, despite the government's selection of an arbitrary one year duration for the suspension of work order intended to make the suspension "definite," the "pending" and "evolving" privatization at the time the suspension of work order was issued, on May 2, 2003, means that the suspension was actually indefinite. The Plaintiff did not know whether, or when, it would be directed to resume work, and the Plaintiff

did not know that the agency had been directed to close out the contract.[3] Even the request for a closeout proposal, in the absence of a termination for convenience, did not act as a notification to the Plaintiff that the contract was, in fact, going to be closed out. The Plaintiff not only remained available to resume work, it actually was directed to resume work in order to perform work on the boiler stacks, for which it was paid. The Defendant argues that there are "no contemporaneous records that demonstrate that OAK was on standby," and that "OAK cannot seriously argue that it was required to remain poised to immediately go back to work." (Defendant's Reply Brief, Page 14). Defendant cites no authority for the proposition that a suspended contractor must demonstrate physical availability at a moment's notice, but defines "standby" as requiring "an uncertain delay during which the Government 'can require the contractor to resume full-scale work at any time.'" (Defendant's Reply Brief, Page 14). In the case at hand, the government not only could require the contractor to resume work at any time, it actually did with regard to the boiler stacks.

The Defendant's reply brief then continues with the completely disingenuous assertion that "OAK cannot seriously argue that it was required to remain poised to immediately go back to work" since "the work was suspended because the Navy was planning to privatize base housing." What the Defendant is suggesting is that OAK should have known that it would not be required to resume work because of the impending privatization but, <u>at the very same time</u>, it should have understood that the <u>work</u> was <u>definitely</u> suspended for one year. This conflicting position set forth by the Defendant is fatally flawed.

[3] The Plaintiff did not learn about the agency's internal documentation making it clear that the agency had been directed to close out the contract as early as April 23, 2003 (AR 130) until that documentation was provided to counsel during discovery.

The question becomes why would the government suspend work for a definite period of one year if it, in fact, knew that work would never resume because of the privatization of base housing? There is only one possible answer – because the government wanted to avoid the payment of extended home office overhead and thought that the law permitted it to do so by simply stating that a suspension of work was for a fixed duration of time. It is respectfully submitted that the cases cited by the Defendant should not be construed by this Court as inviting or countenancing the creation of an artificially "definite" suspension of work for that limited purpose.

The Defendant also fails to understand that a surety does not release a bond simply because the work has been suspended. Bonding companies do not make distinctions between definite and indefinite suspensions of work for the purpose of releasing a bond. As long as a contract is in place, a contractor's payment and performance bonds are obligated. That is why the suspension of work was so problematic to the Plaintiff; a suspension would not result, under any circumstances, in the discharge of a bonding obligation, but a termination for convenience would have done so (if properly communicated to the bonding company). Since virtually all of the Plaintiff's bonding capacity was obligated to this project, the government's failure to terminate the contract for convenience until December 12, 2003, delayed any possible release of the bond until that date, at the earliest. (AR 32-35) Accordingly, since its bond remained obligated, the Plaintiff could not bid or take on other work.

The Defendant's failure to terminate the contract for convenience as soon as the decision was made to "close out" the contract, led to further delay in the release of the Plaintiff's bond. Even though Plaintiff repeatedly asked the Defendant to confirm that its bond was released (September 30, 2003. JSF ¶ 18, AR 58; October 24, 2003, AR 60-62; November 5, 2003, JFF ¶

27, AR 60-63; Aff. Of Eduard J. Eichen, ¶ 8-9), the Defendant failed to do so. The surety, absent confirmation that the bond had been released, became understandably concerned by the confusing implications of a purportedly definite suspension until May 1, 2004, coupled with a termination for convenience before the expiration of the "definite" suspension, and the further complication of a resumption of work on the boiler stacks even after the contract had been terminated. (AR 34-36). Accordingly, the evidence indicates that the surety did not release Plaintiff's bond until shortly after the May 1, 2004 conclusion of the original suspension, on May 17, 2004. (Aff. Of Eduard J. Eichen, ¶ 15; AR 125).)

The defendant seeks to characterize these facts as a matter purely between Plaintiff and its surety, reflecting the surety's lack of "trust" in the Plaintiff. The Defendant cites no authority in the record in support of its "lack of trust" assertion. It is obvious from the repeated requests Plaintiff made for release of its bond that the Plaintiff urgently needed documentation to confirm to the surety that it was no longer obligated to perform the project. (Affidavit of Eduard J. Eichen, ¶ 15; AR 58, 60-63). It would have been a simple matter for the Defendant to have issued such a confirmation since, by the Defendant's own admission, the project was in the process of being closed out. Nevertheless, the Defendant failed to do so. (Affidavit of Eduard J. Eichen, ¶ 9).

The record indicates that the Asst. Resident Officer in Charge of Construction, Lt. Redding, wrote a letter on June 22, 2005 supporting many of the Plaintiff's contentions. (AR 125). The Defendant seeks to discredit the letter, which speaks for itself, because some of the language was allegedly suggested by the Plaintiff. The Defendant also contends that the letter was written for one purpose (to provide information to the Plaintiff's surety), then used for another (as support for this claim). The fact remains that Lt. Redding confirmed that the letter

was truthful (Redding Deposition, Page 68), and even if the letter was initially written for a different purpose, that does not diminish the evidentiary value of Mr. Redding's statements in support of the Plaintiff's contentions in this proceeding. It is very telling, moreover, that the Plaintiff was forced to seek, and received, the assistance of Mr. Redding after he left military service, but that the Plaintiff was unable to obtain similar assistance from the Contracting Officer or other government employees who were still involved with the project.

**D. OAK Has Not Attempted To Rewrite Eichleay**

The Defendant mischaracterizes the Plaintiff's argument by suggesting that the Plaintiff is urging the Court to apply Eichleay in a manner contrary to case precedent. In support of this notion the Defendant simply repeats its previously-raised contention that Plaintiff has offered no "contemporaneous evidence that it was on standby" and repeats the elements of Eichleay mentioned several times elsewhere in its brief. The Plaintiff will not follow the Defendant's lead by repeating the counter-arguments it has offered for the Court's consideration, and refers the Court to pages 10 to 12 above..

It is obvious, however, that in its preoccupation with finding a way for Eichleay not to apply, the Defendant has ignored the fact that this case presents a classic scenario for the payment of Eichleay damages. The Plaintiff, a minority contractor with very limited bonding capacity, was forced into an unreasonably long suspension of work during which it continued to incur home office overhead expenses, but was denied the opportunity to seek new work to absorb those continuing home office overhead expenses. That is the very situation that Eichleay was designed to redress.

In order to prevent companies with larger bonding capacities, and the ability to concurrently perform a number of projects, from unfairly receiving a windfall when their

extended home office overhead was absorbed by other projects, case precedent evolved placing limitations on the eligibility for an Eichleay recovery. In fact, prior to Capital Electric Co. v. U.S., 729 F.2d 743 (Fed.Cir. 1984), virtually any federal construction contractor who was delayed by the government for a period beyond the original contract completion date requested, and received, Eichleay damages. The limitations, and pre-conditions, imposed by Capital Electric and its progeny have prevented those seemingly automatic recoveries by contractors who, in many cases, did not incur unabsorbed home office overhead expenses even though they were delayed by the government. The Defendant, however, urges the Court to narrowly apply the restrictions imposed by current case law in a manner that would deny a small minority contractor, who actually did incur unabsorbed home office overhead expenses, fair and appropriate compensation. In effect, it is the Defendant who urges the Court to rewrite Eichleay by allowing the government to deny Eichleay damages to a contractor who is otherwise eligible by simply issuing a suspension of work for a purportedly "definite" duration, whether justified or not.

Apparently, the Navy Facilities Engineering Command has concluded that it has found a procedural loophole in the law that allows Eichleay damages to be avoided as long as all suspensions of work are for a definite duration. Before long, all federal agencies will probably follow the same strategy and "definite" suspensions of work will be routinely issued as preludes to termination for convenience. It is submitted that such an outcome was not intended by the Court of Appeals for the Federal Circuit. Contrary to the assertion that the Court is being requested to rewrite Eichleay, the Court should make it clear that the case law cited by the Defendant may not be applied to deny recovery of Eichleay damages when those damages are appropriate, and certainly not under the unique facts of this case.

**II. OAK'S Alternative Claim For An Equitable Adjustment For Unabsorbed Home Office Overhead Should Be Allowed**

The Court has the authority to grant any relief it deems appropriate under the law. 28 U.S.C. § 1491(a)(2). Even though the contract modification reserved the Plaintiff's right to file a claim for unabsorbed home office overhead pursuant to the Eichleay formula, if the Court concludes that another way of measuring those damages is appropriate under the unique facts of this case, it is respectfully submitted that the Court is permitted to do so. Although the Eichleay formula has been determined to be the "only proper method of calculating unabsorbed home office overhead," the Court of Appeals for the Federal Circuit has noted that "these statements must be read in light of the factual context in which they arose." Nicon, Inc. v. United States, 331 F.3d 878 (Fed.Cir.2003). In Nicon the Court concluded that even though Eichleay did not apply, the equitable provisions of the contract did allow for the recovery of extended home office overhead. Although the Plaintiff contends that Eichleay may properly be applied to allow for the payment of damages in this case, the Court should recognize that Nicon allows for some flexibility where the recovery of extended home office overhead is warranted, but not specifically allowed by application of the Eichleay formula.

The Defendant argues that the Plaintiff, by the terms of the release contained in Contract Modification No. 4 (AR 38) "released the Government from any and all liability for further equitable adjustments to the contract price or time related to the contract except for Eichleay damages." (Def.'s Reply Brief, Page 21). A fair reading of the release, however, leads to the conclusion that the government was allowing OAK to submit a claim for extended home office overhead costs, in the context of a termination for convenience settlement, and it would not be contrary to either the spirit or intent of the release for those costs to be calculated by a method other than an Eichleay calculation if the Court deems it appropriate.

## CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Defendant's Motion for Summary Judgment and grant its Cross-Motion for Summary Judgment.

Respectfully submitted,

Dated: July 18, 2007

s/Michael H. Payne

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Drive, Suite 100
Fort Washington, PA 19034
Tel: 215-542-2777
Fax: 215-542-2779
E-mail: mhp@phslegal.com

Attorney for Oak Environmental
Consultants, Inc.

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 18th day of July 2007, a copy of the foregoing Plaintiff's Reply In Support Of Its Cross-Motion For Summary Judgment And In Response To The Defendant's Reply In Support Of The Government's Motion For Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael H. Payne